[No. B210084. Second Dist., Div. Two. Aug. 27, 2009.]

CITY OF CLAREMONT, Plaintiff and Respondent, v.
DARRELL KRUSE et al., Defendants and Appellants.

## Counsel

Law Office of Burton Mark Senkfor, Burton Mark Senkfor; and Allison B. Margolin for Defendants and Appellants.

Jeffrey V. Dunn, Sonia R. Carvalho and Marc S. Ehrlich for Plaintiff and Respondent.

## Opinion

CHAVEZ, J.—Defendants and appellants Darrell Kruse (Kruse) and Claremont All Natural Nutrition Aids Buyers Information Service (also known as CANNABIS)[1] appeal from the judgment entered in favor of plaintiff and respondent City of Claremont (the City) after the trial court issued a permanent injunction preventing defendants from operating a medical marijuana dispensary anywhere within the City. We affirm the judgment.

## BACKGROUND

### 1. *Kruse's Permit Application*

In July 2006, Kruse went to Claremont City Hall and asked one of the city planners where he could open a medical marijuana dispensary. The planner referred Kruse to the City's planning director, Lisa Prasse. Prasse told Kruse that because a marijuana dispensary was not an enumerated use under the City's former land use and development code (Land Use and Development Code) and could not easily be categorized under any existing permitted use, it would not be permitted at any location within the City and Kruse would have to seek a code amendment to allow such use. In response, Kruse said that state law required the City to allow for such use. Prasse reiterated that Kruse could seek a code amendment if he wished to pursue the matter further.

---

[1] Kruse and CANNABIS are referred to collectively herein as defendants.

Kruse returned to city hall on September 14, 2006, and submitted an application for a business permit and business license. On the permit application, Kruse described his proposed business as "Medical Cannabis Caregivers Collective and Information Service. Medical Marijuana Plants, Cuttings, Dried Flowers and Edibles." The permit application signed by Kruse contained the following acknowledgment: "All businesses must comply with Claremont's Land Use and Municipal Code requirements. The proposed business shall also not conflict with any state or federal laws. Completing and filing this business permit application with the City of Claremont, and paying the required fees, does not constitute approval of the proposed business at the location indicated on the application. Approval from the Planning and Building Division[s], as well as the Police and Fire Departments are required before the City approves a business permit. The City will notify you of its decision in writing."

As Kruse signed the permit applications, he announced his intent to open for business the following day. Kruse also stated that the City had six weeks to amend its zoning code to accommodate his proposed use.

### 2. *The City's Denial of Kruse's Application*

Sandy Schultz (Schultz), the City's community development director, reviewed Kruse's permit application together with Prasse and the city manager and concluded that Kruse's proposed use as a marijuana dispensary was not allowed under the Claremont Land Use and Development Code. In reaching this conclusion, the City's planning staff relied on table 212.A of the former Land Use and Development Code, which enumerated the uses permitted within the City's commercial districts, and section 212(A) of the former Land Use and Development Code, which stated: "In the event a use is not listed or there is difficulty in categorizing a use as one of the uses listed in table 212.A, the use shall be prohibited unless a Finding of Similar Use is approved by the Director of Community Development pursuant to Chapter 2, Part 7." Neither table 212.A nor section 212(A) of the former Land Use and Development Code contained any reference to marijuana dispensaries.

In a letter dated September 15, 2006, the city manager notified Kruse that the City was denying his application for a business license and permit and would refund his application fees. In the letter, the city manager further advised Kruse that he could appeal the denial of his application to the city council within 10 calendar days and that he could seek a discretionary amendment to the Land Use and Development Code. Kruse did not apply for a code amendment, but commenced operating CANNABIS on September 15, 2006.

On September 21, 2006, Kruse filed an administrative appeal. As the basis for his appeal, Kruse stated: "An amendment to the Land Use Code is not necessary at this time. A medical marijuana caregivers collective is a legal but not conforming business anywhere in the state where it is not regulated. I informed your associate planner of that over 45 days prior to submitting my application, and repeated it to him and his supervisor on another occasion. You had sufficient time with that knowledge to notify and hold hearings and regulate if you chose to do so."

### 3. The City's Moratorium

On September 26, 2006, the City adopted an ordinance pursuant to Government Code section 65858 imposing a 45-day moratorium preventing the approval or issuance of any permit, variance, license, or other entitlement for the establishment of a medical marijuana dispensary in the City. The recitals to the ordinance state that California voters adopted the Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5; Compassionate Use Act or CUA), the intent of which was to enable persons in need of medical marijuana for medicinal purposes to obtain and use it under limited, specified circumstances; that the City's municipal code does not address or regulate the existence or location of medical marijuana dispensaries; that there is a correlation between such dispensaries and increases in crime; that there was uncertainty between federal laws and California laws regarding medical marijuana dispensaries; and that the regulation of such dispensaries required careful consideration and thorough study. On October 5, 2006, the city manager wrote to Kruse informing him that the moratorium had rendered moot Kruse's appeal of the City's denial of his business license and permit applications.

On October 24, 2006, the City extended the moratorium for 10 months 15 days, and on September 11, 2007, extended the moratorium for an additional year.

### 4. The City's Enforcement Actions Against Defendants

In a letter dated October 5, 2006, Schultz directed Kruse to cease and desist from further activity at CANNABIS because he was operating without a business license. On October 12, 2006, Kruse called Schultz and requested a meeting. Kruse met with Schultz and Prasse on October 16, 2006. At that meeting, Schultz explained that by operating CANNABIS without a business permit or license, Kruse was violating the City's zoning requirements. Schultz advised Kruse that the City would conduct a code compliance inspection of CANNABIS on October 18, 2006.

On October 18, 2006, Schultz and Prasse visited CANNABIS and found Kruse present. Schultz asked Kruse whether he was open for business and

Kruse said "yes." Based on that inspection, Schultz sent Kruse a notice of violation, instructing him to cease and desist from operating CANNABIS and warning him that failure to comply by October 25, 2006, would subject him to an administrative citation.

Schultz and Prasse returned to CANNABIS on October 25, 2006, where Kruse informed them that CANNABIS was still open for business. Schultz issued an administrative citation ordering Kruse to appear in Pomona Superior Court on December 26, 2006.

On December 26, 2006, the Los Angeles County Superior Court set a date for Kruse's code enforcement trial. At the January 9, 2007 trial, the court found Kruse guilty of operating CANNABIS without a business license or permit, in violation of Claremont Municipal Code section 4.06.020, and fined him for that violation.

In a letter dated January 11, 2007, the city attorney made a final demand that Kruse cease operating CANNABIS without a business license and warned that the City would file a civil action to enjoin further operation of CANNABIS. Kruse disregarded the warning and continued to operate CANNABIS. The City issued administrative citations to Kruse on January 16, 17, 18, 19, 22, 23, 24, 25, 26, 29, 30 and 31, and on February 1, 2007.

## PROCEDURAL HISTORY

On January 19, 2007, the City filed this action against Kruse for a temporary restraining order and a preliminary and permanent injunction to abate a public nuisance. The City's complaint alleged, among other things, that the Claremont Municipal Code requires a person to obtain a business license and business permit, and to procure a tax certificate by paying the appropriate business tax before operating a business within the City and that Kruse's operation of CANNABIS without a business license was a public nuisance as a matter of law. On February 2, 2007, the City obtained a temporary restraining order and order to show cause why a preliminary injunction should not issue to prevent Kruse from operating CANNABIS for the duration of the action. After a hearing on the order to show cause, the trial court issued a preliminary injunction order on April 4, 2007.

A court trial took place on March 17, 2008. Pursuant to a stipulation between the parties, the following facts were established: (1) medical marijuana dispensaries are not specifically addressed in the Land Use and Development Code; (2) defendants operated without a business license or permit from September 15, 2006, until February 2, 2007; and (3) defendants operated within the requirements of the Compassionate Use Act or the Medical

Marijuana Program. In addition, the trial court took judicial notice of certain portions of the City's municipal code and Land Use and Development Code, as well as Kruse's conviction for operating a business without a license in violation of Claremont Municipal Code section 4.06.020, and the temporary restraining order and preliminary injunction issued against him. The City and Kruse presented the testimony of several witnesses. At the conclusion of the testimony, the trial court granted the parties' request to submit closing briefs in lieu of argument.

On April 22, 2008, the trial court issued a tentative statement of decision, to which defendants filed objections. On May 12, 2008, the trial court issued its final statement of decision, in which the court addressed defendants' objections. In its statement of decision, the trial court made certain findings of fact, including that the City informed Kruse that marijuana dispensaries are not permitted uses under the Land Use and Development Code, and that the City denied Kruse's business permit and license applications on that basis. Kruse appealed the denial of his applications, but the City deemed the appeal to be moot when it enacted the moratorium on medical marijuana dispensaries.

The trial court also reached several conclusions of law: The Compassionate Use Act does not preempt the City from imposing the moratorium involved in this action, because "there is nothing in the text or history of the Compassionate Use Act that suggests that the voters intended to mandate that municipalities allow medical marijuana dispensaries to operate within their city limits, or to alter the fact that land use has historically been a function of local government under their grant of police power." The moratorium was a valid exercise of the City's authority under Government Code section 65858. In light of the moratorium, the City properly dismissed as moot defendants' appeal of the denial of the business permit and license applications. Defendants' insistence on operating a medical marijuana dispensary within the City without a business license or tax certificate, and in violation of the federal Controlled Substances Act (21 U.S.C. § 801 et seq.), constituted a nuisance per se, entitling the City to permanent injunctive relief so long as the moratorium is in effect.

Judgment was entered in the City's favor on June 10, 2008. This appeal followed.

## DEFENDANTS' CONTENTIONS

Defendants contend the trial court erred by concluding that their operation of CANNABIS constituted a public nuisance under Civil Code section 3479 because there was no evidence that any illegal sale of controlled substances occurred or that CANNABIS's operations caused any actual harm. Defendants further contend the trial court's finding of a nuisance per se must be

reversed because the City never pled a cause of action for nuisance per se, and because Claremont Municipal Code section 1.12.010 cannot be the basis for finding a nuisance per se.

Defendants claim that California's medical marijuana laws, the Compassionate Use Act and the Medical Marijuana Program, preempt the City's enactment of a temporary moratorium on medical marijuana dispensaries and preclude the City from denying their application for a business license and permit to operate a medical marijuana dispensary. Defendants also claim that the City's moratorium is invalid because it was enacted for improper reasons under state law.

Defendants challenge the validity and scope of the permanent injunction issued against them. They maintain that the basis for the injunction—operating without a business license and permit—was the subject of a pending administrative appeal, and that the City's dismissal of that appeal as moot after enacting the moratorium deprived defendants of their due process rights. Defendants contend the injunction issued was overbroad and should have been limited to the specific location at which CANNABIS had been operated.

## DISCUSSION[2]

*I. Nuisance*

■ Civil Code section 3479 defines a nuisance as: "Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." "A nuisance may be a public nuisance, a private nuisance, or both. [Citation.]" (*Newhall Land & Farming Co. v. Superior Court* (1993) 19 Cal.App.4th 334, 341 [23 Cal.Rptr.2d 377].) "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." (Civ. Code, § 3480.)

■ "[A] nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise of the police power, expressly declares a particular object or substance, activity, or circumstance, to be a nuisance. . . . [T]o rephrase the rule, to be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law." (*Beck Development Co. v.*

---

[2] We discuss the applicable standards of review as we address each of the issues below.

*Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1206–1207 [52 Cal.Rptr.2d 518].) "[W]here the law expressly declares something to be a nuisance, then no inquiry beyond its existence need be made . . . ." (*Id.* at p. 1207.) " 'Nuisances *per se* are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance.' [Citations.]" (*City of Costa Mesa v. Soffer* (1992) 11 Cal.App.4th 378, 382 [13 Cal.Rptr.2d 735], fn. omitted.)

We review factual issues underlying the trial court's issuance of the injunction to abate a public nuisance under the substantial evidence standard. Issues of pure law are subject to de novo review. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1136–1137 [60 Cal.Rptr.2d 277, 929 P.2d 596].)

Defendants contend their operation of CANNABIS cannot be enjoined as a nuisance under Civil Code section 3479 because the only portion of the statute that could possibly apply is the "illegal sale of controlled substances" and there was no such illegal activity in this case. They maintain that all sales of marijuana in this case complied with California's medical marijuana laws and that pursuant to the parties' stipulation, "[t]here is no issue in this case whether or not Defendants sold marijuana in violation of California state law."

■ The trial court's determination that defendants' operation of a medical marijuana dispensary constituted a nuisance per se was based not on violations of state law, however, but on violations of the City's municipal code.[3] Section 4.06.020 of the Claremont Municipal Code states that it is unlawful to transact business without first procuring a tax certificate from the City to do so. It is undisputed that defendants operated CANNABIS without first obtaining a business license or tax certificate.

In addition, the Land Use and Development Code expressly prohibits any use that is not specifically enumerated therein or that cannot easily be categorized as an enumerated use. It is also undisputed that medical marijuana dispensaries are not specifically addressed in the City's Land Use and

---

[3] The trial court also found that Kruse's operation of CANNABIS could be enjoined as a nuisance per se because, notwithstanding California's medical marijuana laws, the cultivation and distribution of marijuana remains illegal under the federal Controlled Substances Act (21 U.S.C. § 801 et seq.). Kruse contends this was error because the City lacks authority to enforce violations of the Controlled Substances Act. Because we affirm the trial court's order enjoining defendants' operation of a medical marijuana dispensary in violation of the City's municipal code as a nuisance per se, we need not determine whether or not the Controlled Substances Act provided a separate basis for granting injunctive relief in this case. "[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record." (*Blue Chip Enterprises, Inc. v. Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706, 712 [139 Cal.Rptr. 651].)

Development Code. The City advised Kruse that his proposed use was not permitted in any of the City's existing land use zoning districts. The City further advised Kruse that he could seek an amendment to the Land Use and Development Code to establish where such a business might be allowed. He did not do so but chose to operate CANNABIS in violation of the applicable requirements.

Defendants contend their operation of a medical marijuana dispensary could have been categorized under any of the following existing permitted uses enumerated in the City's Land Use and Development Code: "cigar/cigarette/smoke shops," "food/drug and kindred products," "health, herbal, botanical stores," "pharmacies," "counseling," and "offices for philan-thropic, charitable and service organizations." They maintain that the City improperly denied their applications for a business license and permit for this reason. Defendants cannot challenge the denial of their applications for a business license and permit in this appeal, however, because they chose to commence operating without obtaining the requisite approvals to do so, in violation of applicable city laws. Moreover, after the City dismissed defend-ants' administrative appeal from the denial of their applications for a business license and permit, defendants' proper recourse was to file a petition for writ of mandate. (Code Civ. Proc., § 1085; *American Federation of State, County & Municipal Employees v. Metropolitan Water Dist.* (2005) 126 Cal.App.4th 247, 261 [24 Cal.Rptr.3d 285].) They did not do so. Instead, they continued to operate illegally, despite the City's repeated directives to cease and desist from doing so. The City's discretionary decision to deny defendants' applica-tions is not at issue in this action to enjoin defendants from operating in violation of the City's municipal code.

■ Section 1.12.010 of the Claremont Municipal Code expressly states that a condition caused or permitted to exist in violation of the municipal code provisions may be abated as a public nuisance: "In addition to the penalties provided in this chapter, any condition caused or permitted to exist in violation of any of the provisions . . . of this code is declared a public nuisance, and may be abated by civil proceedings such as restraining orders, civil injunctions, abatement proceedings or the like."[4] Defendants' operation of a nonenumerated and therefore expressly prohibited use, without obtaining a business license and tax certificate, created a nuisance per se under section 1.12.010.

The facts presented here are materially indistinguishable from those in *City of Corona v. Naulls* (2008) 166 Cal.App.4th 418 [83 Cal.Rptr.3d 1] (*Naulls*). The defendant in *Naulls*, like Kruse, opened a medical marijuana dispensary

---

[4] We granted the City's request for judicial notice of various provisions of its municipal code, including section 1.12.010.

without the approval of the City of Corona.[5] The business license application signed by the defendant in *Naulls* contained an acknowledgment similar to that in Kruse's application, stating that all businesses must comply with municipal code requirements and that the approval of the planning department was required prior to opening. (166 Cal.App.4th at p. 427.) Corona's municipal code, like Claremont's municipal code, listed all of the permitted uses within each zoning district, but did not include selling or distributing marijuana among the classified uses. (*Id.* at p. 431.) Persons seeking to use their property for a nonclassified use in Corona were required to follow procedures for obtaining the planning commission's approval of such use. The defendant in *Naulls*, like Kruse, failed to follow those procedures. (*Id.* at p. 432.) Corona's municipal code, like section 1.12.010 of Claremont's municipal code, expressly stated that any condition caused or permitted to exist in violation of its provisions constituted a public nuisance. (166 Cal.App.4th at p. 433.) The court in *Naulls* found that substantial evidence supported the trial court's conclusion that the defendant's failure to comply with the city's procedural requirements before operating a medical marijuana dispensary "created a nuisance per se" pursuant to Corona's municipal code, and upheld the issuance of a preliminary injunction. (*Id.* at p. 433.)

█ We find *Naulls* persuasive here. Kruse's operation of a medical marijuana dispensary without the City's approval constituted a nuisance per se under section 1.12.010 of the City's municipal code and could properly be enjoined. (*Naulls, supra*, 166 Cal.App.4th at p. 433.)

Defendants contend the City failed to establish a public nuisance because it made no showing that CANNABIS's operations caused any actual harm and such showing is a necessary element of a nuisance cause of action. No such showing is required, however, for a cause of action for nuisance per se. For nuisances per se, "no proof is required, beyond the actual fact of their existence, to establish the nuisance. No ill effects need be proved." (*McClatchy v. Laguna Lands, Ltd.* (1917) 32 Cal.App. 718, 725 [164 P. 41].) *In re Firearm Cases* (2005) 126 Cal.App.4th 959 [24 Cal.Rptr.3d 659], on which defendants rely, contradicts rather than supports their position. The court in that case stated that in order to establish a public nuisance, "it is not necessary to show that harm actually occurred." (*Id.* at p. 988.)

Defendants claim the trial court's determination of a nuisance per se must be reversed because the City never pled a cause of action for nuisance per se.

---

[5] The defendant in *Naulls* failed to indicate in his application for a business license that he intended to operate a medical marijuana dispensary, instead describing the business as "miscellaneous retail." Based on that application, the city issued a business license; however, had the defendant provided the correct information, his application would not have been granted. (*Naulls, supra*, 166 Cal.App.4th at p. 427.)

They provide no citation to legal authority, however, as required by California Rules of Court, rule 8.204, to support this contention. We therefore treat that contention as waived. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546 [35 Cal.Rptr.2d 574].)

■ Defendants suggest that Claremont Municipal Code section 1.12.010 should not be considered on appeal because it "was never presented to the trial court, and was not a basis for the City's theory of the case at trial nor for the trial court's rulings." The trial court did consider and apply the doctrine of nuisance per se, however, and facts sufficient to sustain application of that doctrine were presented to the trial court. "A legal theory to sustain a judgment may be considered on appeal even though it was not raised in the trial court, as long as it does not raise factual issues not presented to the trial court. [Citation.]" (*Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35, 43 [100 Cal.Rptr. 791] [Lab. Code section not raised in trial court properly considered on appeal so long as it does not raise factual issues not presented below].)

Defendants next contend Claremont Municipal Code section 1.12.010 is "an overbroad omnibus statute" that attempts to "bootstrap" every municipal code violation into a public nuisance. They maintain that allowing the City to enforce section 1.12.010 will lead to absurd results. They argue by way of example that because section 1.14.050 of the Claremont Municipal Code requires all fines and penalties to be paid within 30 calendar days, "paying a fine late to the City will constitute a nuisance as a matter of law" under section 1.12.010. The plain language of section 1.12.010 itself, however, precludes such an absurdity. Section 1.12.010 states: "*In addition to the penalties provided in this chapter*, any *condition* caused or permitted to exist in violation of any of the provisions of this code is declared a public nuisance, and may be abated by civil proceedings such as restraining orders, civil injunctions, abatement proceedings or the like." (Italics added.) The ordinance thus declares the condition giving rise to a fine or penalty to be a nuisance, not the late payment of the penalty itself.

Defendants cite *Leppo v. City of Petaluma* (1971) 20 Cal.App.3d 711 [97 Cal.Rptr. 840] as support for their argument that the City cannot enforce an ordinance that declares a condition that exists in violation of the municipal code to constitute a public nuisance. *Leppo* did not involve the enforcement of such an ordinance nor did it apply the doctrine of nuisance per se. The issue presented in that case was whether a city could dispense with a due process hearing and summarily demolish a building pursuant to its power to abate a public nuisance. (*Id.* at pp. 717–718.) The court in *Leppo* held that a municipality may abate a nuisance only after a judicial determination that the

property is a nuisance has been made based upon competent evidence. (*Id.* at p. 718.) Defendants in this case were accorded their due process right to such a judicial determination.

The trial court did not err by concluding that defendants' operation of a medical marijuana dispensary, without obtaining a business license and permit, constituted a nuisance per se under section 1.12.010 of the City's municipal code. (*Naulls, supra,* 166 Cal.App.4th at p. 433.)

## II. *Preemption*

Defendants contend the Compassionate Use Act and the Medical Marijuana Program preempt the City's enactment of a moratorium on medical marijuana dispensaries and preclude the City from denying them a business license and permit to operate such a dispensary.

### A. *Applicable Legal Principles*

■ "Whether state law preempts a local ordinance is a question of law that is subject to de novo review. [Citation.]" (*Roble Vista Associates v. Bacon* (2002) 97 Cal.App.4th 335, 339 [118 Cal.Rptr.2d 295].) "The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption. [Citation.]" (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 [45 Cal.Rptr.3d 21, 136 P.3d 821] (*Big Creek Lumber*).)

■ "[T]he 'general principles governing state statutory preemption of local land use regulation are well settled . . . .' [Citation.]" (*Big Creek Lumber, supra,* 38 Cal.4th at p. 1150.) Under article XI, section 7 of the California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." " 'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' [Citations.]" (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534] (*Sherwin-Williams*), quoting *Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876].) There are three types of conflict that give rise to preemption: " ' "A conflict exists if the local legislation ' "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." ' " ' [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1242 [63 Cal.Rptr.3d 398, 163 P.3d 89].)

■ " '[I]t is well settled that local regulation is invalid if it attempts to impose additional requirements in a field which is fully occupied by statute.'

[Citation.] '[L]ocal legislation enters an area that is "fully occupied" by general law when the Legislature has expressly manifested its intent to "fully occupy" the area [citation], or when it has impliedly done so in light of one of the following indicia of intent: "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the" locality [citations].' [Citation.]" (*American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1252 [23 Cal.Rptr.3d 453, 104 P.3d 813].)

■ " '[A]bsent a clear indication of preemptive intent from the Legislature,' we presume that local regulation 'in an area over which [the local government] traditionally has exercised control' is not preempted by state law. [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica, supra*, 41 Cal.4th at p. 1242.) A local government's land use regulation is one such area. "[W]hen local government regulates in an area over which it traditionally exercised control, such as the location of particular land uses, California courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute. [Citation.]" (*Big Creek Lumber, supra*, 38 Cal.4th at p. 1149.)

### B. California's Medical Marijuana Laws

#### 1. Compassionate Use Act

The Compassionate Use Act (CUA) was approved by voters as a ballot initiative in 1996. The law is codified at Health and Safety Code section 11362.5[6] and provides, in relevant part, as follows:

"(b)(1) The people of the State of California hereby find and declare that the purposes of the [CUA] are as follows:

"(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.

---

[6] All further statutory references are to the Health and Safety Code unless otherwise indicated.

"(B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.

"(C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana.

"(2) Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes.

"(c) Notwithstanding any other provision of law, no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes.

"(d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.

"(e) For the purposes of this section, 'primary caregiver' means the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person."

The nature of the right to use marijuana created by the CUA has been examined in several California court decisions. In *People v. Mower* (2002) 28 Cal.4th 457 [122 Cal.Rptr.2d 326, 49 P.3d 1067], the California Supreme Court rejected the defendant's argument that the CUA provided an absolute defense to arrest and prosecution for certain marijuana offenses and concluded that the statute provides a limited defense from prosecution for cultivation and possession of marijuana. (*Mower*, at p. 470.) The defense accorded by the CUA is limited to "patients and primary caregivers only, to prosecution for only two criminal offenses: section 11357 (possession) and section 11358 (cultivation)." (*People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1400 [70 Cal.Rptr.2d 20] (*Peron*).) In view of the statute's narrow reach, "courts have consistently resisted attempts by advocates of medical marijuana to broaden the scope of these limited specific exceptions." (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 773 [33 Cal.Rptr.3d 859] (*Urziceanu*).) For example, courts have determined that the CUA did not create "a constitutional right to obtain marijuana" (*Urziceanu*, at p. 774), and have refused to expand the scope of the CUA to allow the sale or nonprofit

distribution of marijuana by medical marijuana cooperatives. (*Urziceanu*, at p. 774; *Peron, supra*, at pp. 1389–1390.)

## 2. *Medical Marijuana Program*

In 2003, the Legislature enacted the Medical Marijuana Program (§ 11362.5 et seq.) (MMP). The MMP was passed in part to "[c]larify the scope of the application of the [CUA] and facilitate the prompt identification of qualified patients and their designated primary caregivers in order to avoid unnecessary arrest and prosecution of these individuals and provide needed guidance to law enforcement officers[;] [¶] . . . [p]romote uniform and consistent application of the act among the counties within the state . . . [¶] . . . [and] [e]nhance the access of patients and caregivers to medical marijuana through collective, cooperative cultivation projects." (Stats. 2003, ch. 875, § 1.) In order to do so, the MMP created a voluntary program for the issuance of identification cards to qualified patients and primary caregivers. (§ 11362.71.) The MMP also "immunizes from prosecution a range of conduct ancillary to the provision of medical marijuana to qualified patients. [Citation.]" (*People v. Mentch* (2008) 45 Cal.4th 274, 290 [85 Cal.Rptr.3d 480, 195 P.3d 1061] (*Mentch*).) Section 11362.765 accords qualified patients, primary caregivers, and holders of valid identification cards, an affirmative defense to certain enumerated penal sanctions that would otherwise apply to transporting, processing, administering, or giving away marijuana to qualified persons for medical use.

In *Mentch*, the California Supreme Court "closely analyzed" section 11362.765 and concluded that the statute provides criminal immunity for specified individuals under a narrow set of circumstances: "[T]he immunities conveyed by section 11362.765 have three defining characteristics: (1) they each apply only to a specific group of people; (2) they each apply only to a specific range of conduct; and (3) they each apply only against a specific set of laws. Subdivision (a) provides in relevant part: 'Subject to the requirements of this article, the individuals specified in subdivision (b) shall not be subject, *on that sole basis*, to criminal liability under [enumerated sections of the Health and Safety Code].' (§ 11362.765, subd. (a), italics added.) Thus, subdivision (b) identifies both the groups of people who are to receive immunity and the 'sole basis,' the range of their conduct, to which the immunity applies, while subdivision (a) identifies the statutory provisions against which the specified people and conduct are granted immunity." (*Mentch, supra*, 45 Cal.4th at pp. 290–291.)

The MMP also provides a new affirmative defense to criminal liability for qualified patients, caregivers, and holders of valid identification cards who collectively or cooperatively cultivate marijuana. (*Urziceanu, supra*, 132

Cal.App.4th at pp. 785–786.) Section 11362.775 provides: "Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570."[7]

In addition, the MMP quantifies the amount of marijuana a qualified patient may possess (§ 11362.77), provides that employers need not accommodate the medical use of marijuana (§ 11362.785), and identifies places and circumstances where medical use of marijuana is prohibited (§ 11362.79).[8]

### C. Express Preemption

 Whether the CUA and MMP expressly preempt the City's actions in this case turns on whether the field occupied by those statutes encompasses the challenged City ordinances. That analysis requires a review of the statutory language as the best indicator of legislative intent. (*Big Creek Lumber, supra,* 38 Cal.4th at p. 1152.) If that language is unambiguous, we presume that the Legislature, or, in the case of an initiative measure, the voters, intended the meaning apparent on the face of the statute. (*Urziceanu, supra,* 132 Cal.App.4th at p. 786.) A court " 'may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.]" (*People ex rel. Lungren v. Superior Court* (1996). 14 Cal.4th 294, 301 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) If that statutory language "is susceptible to more than one reasonable interpretation, 'we look to "extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' [Citations.]" (*Big Creek Lumber, supra,* at p. 1153.)

### 1. No Express Preemption by the CUA

 The CUA does not expressly preempt the City's actions in this case. The operative provisions of the CUA do not address zoning or business

---

[7] The penal statutes referenced in section 11362.775 include possession of marijuana for sale (§ 11359); maintaining a place for the sale, giving away, or use of marijuana (§ 11366); making available premises for the manufacture, storage, or distribution of controlled substances (§ 11366.5); and abatement of nuisance created by premises used for manufacture, storage, or distribution of controlled substances (§ 11570). (§ 11362.765, subd. (a).)

[8] Section 11362.79 prohibits the use of medical marijuana in any place where smoking is prohibited by law, in or within 1,000 feet of a school, recreation center, or youth center, in a school bus, in a motor vehicle while it is being operated, and while operating a boat.

licensing decisions. The statute's operative provisions protect physicians from being "punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes" (§ 11362.5, subd. (c)), and shield patients and their qualified caregivers from criminal liability for possession and cultivation of marijuana for the patient's personal medical purposes if approved by a physician (§ 11362.5, subd. (d)). The plain language of the statute does not prohibit the City from enforcing zoning and business licensing requirements applicable to defendants' proposed use.

The CUA does not authorize the operation of a medical marijuana dispensary (§ 11362.5; *Peron, supra*, 59 Cal.App.4th at pp. 1389–1390), nor does it prohibit local governments from regulating such dispensaries. Rather, the CUA expressly states that it does not supersede laws that protect individual and public safety: "Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others . . . ." (§ 11362.5, subd. (b)(2).) The CUA, by its terms, accordingly did not supersede the City's moratorium on medical marijuana dispensaries, enacted as an urgency measure "for the immediate preservation of the public health, safety, and welfare." (Claremont Ord. No. 2006-08, § 1.)

Defendants point to the findings and declarations preceding the CUA's operative provisions, stating that one purpose of the CUA is "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes,"[9] as evidence of the voters' intent to make the ability to obtain and use medical marijuana a matter of statewide concern. The California Supreme Court, in *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920 [70 Cal.Rptr.3d 382, 174 P.3d 200] (*Ross*), rejected a similarly broad interpretation of this statutory language and refused to extend the limited protection accorded by the CUA to the area of employment law. (42 Cal.4th at p. 928.) The plaintiff in *Ross* was a qualified medical marijuana user under the CUA who was discharged from his employment after testing positive for marijuana in an employment-related drug test. He sued the employer, claiming the discharge was in violation of public policy and the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.). The Supreme Court affirmed the sustaining of the employer's demurrer, concluding that "[n]othing in the text or history of the [CUA] suggests the voters intended the measure to address the respective rights and duties of employers and employees." (42 Cal.4th at p. 924.) The Supreme Court noted that neither the operative provisions of the statute nor the findings and declarations preceding those operative provisions mention employment law. (*Id.* at p. 928.) The court rejected the plaintiff's argument that one of the stated purposes of the CUA, "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes" (§11362.5,

---

[9] Section 11362.5, subdivision (b)(1)(A).

subd. (b)(1)(A)), should be interpreted broadly. The court instead determined that the "limited" right granted by the CUA was the right of a patient or primary caregiver to possess or cultivate marijuana for the patient's personal medical use upon the approval of a physician without becoming subject to criminal liability. (*Ross*, at p. 929.)

The court in *Ross* also found support for its narrow reading of the CUA in the statute's history: "The proponents of the [CUA] (Health & Saf. Code, § 11362.5) consistently described the proposed measure to the voters as motivated by the desire to create a narrow exception to the criminal law. The proponents spoke, for example, of their desire to 'protect patients from criminal penalties for marijuana' (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) argument in favor of Prop. 215, p. 60) and not to 'send cancer patients to jail for using marijuana' (*id.*, rebuttal to argument against Prop. 215, p. 61). Although the measure's *opponents* argued the act would 'make it legal for people to smoke marijuana in the workplace . . . or in public places . . . next to your children' (*id.*, rebuttal to argument in favor of Prop. 215, p. 60), the argument was obviously disingenuous because the measure did not purport to change the laws affecting public intoxication with controlled substances (Pen. Code, § 647, subd. (f)) or the laws addressing controlled substances in such places as schools and parks (Health & Saf. Code, §§ 11353.5, 11353.7), and the act expressly provided that it did not 'supersede legislation prohibiting persons from engaging in conduct that endangers others' (*id.*, § 11362.5, subd. (b)(2)). Proponents reasonably countered the argument by observing that, under the measure, '[p]olice officers can still arrest anyone for marijuana offenses. Proposition 215 simply gives those arrested a defense in court, *if they can prove they used marijuana with a doctor's approval.*' (Ballot Pamp., *supra*, rebuttal to argument against Prop. 215, p. 61.)" (*Ross, supra*, 42 Cal.4th at p. 929, fns. omitted.)

The court in *Ross* concluded: "[G]iven the [CUA's] modest objectives and the manner in which it was presented to the voters for adoption, we have no reason to conclude the voters intended to speak so broadly, and in a context so far removed from the criminal law, as to require employers to accommodate marijuana use . . . . [¶] . . . There is no question . . . that the voters had the power to change state law concerning marijuana in any respect they wished. Thus, the question before us is not whether the voters had the power to change employment law, but whether they actually intended to do so. As we have explained, there is no reason to believe they did. For a court to construe an initiative statute to have substantial unintended consequences strengthens neither the initiative power nor the democratic process; the initiative power is strongest when courts give effect to the voters' formally expressed intent, without speculating about how they might have felt concerning subjects on which they were not asked to vote." (*Ross, supra*, 42 Cal.4th at p. 930.)

The same reasoning applies here. Zoning and licensing are not mentioned in the findings and declarations that precede the CUA's operative provisions. Nothing in the text or history of the CUA suggests it was intended to address local land use determinations or business licensing issues. The CUA accordingly did not expressly preempt the City's enactment of the moratorium or the enforcement of local zoning and business licensing requirements.

### 2. *No Express Preemption by the MMP*

■ The MMP does not expressly preempt the City's actions at issue here. The operative provisions of the MMP, like those in the CUA, provide limited criminal immunities under a narrow set of circumstances. The MMP provides criminal immunities against cultivation and possession for sale charges to specific groups of people and only for specific actions. (§ 11362.765; *Mentch, supra,* 45 Cal.4th at pp. 290–291.) It accords additional immunities to qualified patients, holders of valid identification cards, and primary caregivers who "collectively or cooperatively cultivate marijuana for medical purposes." (§ 11362.775.)

Medical marijuana dispensaries are not mentioned in the text or history of the MMP. The MMP does not address the licensing or location of medical marijuana dispensaries, nor does it prohibit local governments from regulating such dispensaries. Rather, like the CUA, the MMP expressly allows local regulation. Section 11362.83 of the MMP states: "Nothing in this article shall prevent a city or other local governing body from adopting and enforcing laws consistent with this article." Nothing in the text or history of the MMP precludes the City's adoption of a temporary moratorium on issuing permits and licenses to medical marijuana dispensaries, or the City's enforcement of licensing and zoning requirements applicable to such dispensaries.

### D. *Implied Preemption*

Neither the CUA nor the MMP impliedly preempts the City's actions in this case. Neither statute addresses, much less completely covers, the areas of land use, zoning and business licensing. Neither statute imposes comprehensive regulation demonstrating that the availability of medical marijuana is a matter of "statewide concern," thereby preempting local zoning and business licensing laws. The statement of voter intent in the CUA, "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes" (§ 11362.5, subd. (b)(1)(A)), on which defendants rely as the basis for claiming that the availability of medical marijuana is a matter of statewide concern, does not create "a broad right to use marijuana without hindrance or inconvenience" (*Ross, supra,* 42 Cal.4th at p. 928), or to dispense marijuana without regard to local zoning and business licensing laws.

██ Neither the CUA nor the MMP partially covers the subject of medical marijuana " 'in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action.' " (*Sherwin-Williams, supra,* 4 Cal.4th at p. 898.) Neither statute precludes local action, except in the areas of punishing physicians for recommending marijuana to their patients, and according qualified persons affirmative defenses to enumerated penal sanctions. (§§ 11362.5, subds. (c), (d), 11362.765, 11362.775.) The CUA expressly provides that it does not "supersede legislation prohibiting persons from engaging in conduct that endangers others" (§ 11362.5, subd. (b)(2)), and the MMP expressly states that it does not "prevent a city or other local governing body from adopting and enforcing laws consistent with this article" (§ 11362.83). "Preemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local regulations. Similarly, it should not be found when the statutory scheme recognizes local regulations." (*People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 485 [204 Cal.Rptr. 897, 683 P.2d 1150].)

██ Finally, neither the CUA nor the MMP provides partial coverage of a subject that " 'is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit' " to the City. (*Sherwin-Williams, supra,* 4 Cal.4th at p. 898, quoting *In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809].) "[A] local ordinance is not impliedly preempted by conflict with state law unless it 'mandate[s] what state law expressly forbids, [or] forbid[s] what state law expressly mandates.' [Citation.] That is because, when a local ordinance 'does not prohibit what the statute commands or command what it prohibits,' the ordinance is not 'inimical to' the statute. [Citation.]" (*Big Creek Lumber, supra,* 38 Cal.4th at p. 1161.) ██ Neither the CUA nor the MMP compels the establishment of local regulations to accommodate medical marijuana dispensaries. The City's enforcement of its licensing and zoning laws and its temporary moratorium on medical marijuana dispensaries do not conflict with the CUA or the MMP.

### E. *Adequacy of Trial Court's Findings*

Defendants argue that the trial court "erroneously refused to determine whether or not being able to obtain and use medical marijuana is a matter of statewide concern," and suggest that such a determination was necessary in order to decide whether the CUA and MMP preempted the City's actions in this case.[10] The trial court's statement of decision adequately sets forth the

---

[10] In the trial court below, defendants presented an opinion of the Attorney General (88 Ops.Cal.Atty.Gen. 113 (2005)), as authority for their argument that the ability to obtain and use medical marijuana is a "matter of statewide concern," preempting local regulation. That

factual and legal bases for its conclusion that state marijuana laws do not preempt the City's actions. (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513 [75 Cal.Rptr.3d 771] [statement of decision adequate if it fairly discloses the determinations as to ultimate facts and material issues in the case].) The trial court was responsible for determining whether the City's regulation conflicted with state law because it duplicates, contradicts, or enters an area fully occupied by state law, either expressly or by legislative implication. (*Action Apartment Assn., Inc. v. City of Santa Monica, supra,* 41 Cal.4th at p. 1242.) It fulfilled that responsibility.

III. *Other Bases for Challenging the City's Moratorium*

Defendants claim the City's moratorium on medical marijuana dispensaries is invalid because it purports to "resolve conflicts between federal and State laws" in a field that the state "has already fully occupied." Defendants further contend that by enacting the moratorium, "the City is in essence challenging the constitutionality of the State medical marijuana laws, which the City cannot properly do."

The moratorium neither addresses nor challenges the constitutionality of the CUA or the MMP. Although the ordinance does refer to a current "conflict between federal laws and California laws regarding the legality of medical marijuana dispensaries," it does not purport to resolve that conflict. (Claremont Ord. No. 2006-08, § 4.) The ordinance clearly states the City's intent, in light of the conflict of laws, to study the potential impact of medical marijuana dispensaries and to impose a temporary moratorium on the operation of such dispensaries until completion of its study. The relevant provisions of Claremont Ordinance No. 2006-08 state:

"5. The United States Supreme Court addressed marijuana use in California in *United States v. Oakland Cannabis Buyers' Cooperative,* (2001) 532 U.S. 483 [149 L.Ed.2d 722, 121 S.Ct. 1711]. The Supreme Court held that the federal Controlled Substances Act continues to prohibit marijuana use, distribution, and possession, and that no medical necessity exception exists to these prohibitions. Further, the Supreme Court recently held in *Gonzales v. Raich* (2005) [545 U.S. 1 [162 L.Ed.2d 1, 125 S.Ct. 2195]], that the federal Controlled Substances Act prohibits local cultivation and use of marijuana

---

opinion addresses only one specific area of regulation covered by the MMP—the establishment of a registry and identification card program. The Attorney General opined that "the Legislature has demonstrated its intention to fully occupy" that narrow, specific field of regulation. (88 Ops.Cal.Atty.Gen., *supra,* at p. 116.) At the same time, the Attorney General noted: "[T]he Legislature expressly did not intend to 'fully occupy' all areas of law concerning the use of medical marijuana when it enacted the statewide registry and identification card program" and concluded that state marijuana laws "do not expressly or impliedly preempt this entire field of regulation." (*Ibid.*) That opinion thus undermines, rather than supports, defendants' position.

under all circumstances. Therefore, it appears that there is currently a conflict between federal laws and California laws regarding the legality of medical marijuana dispensaries.

"6. To address the apparent conflict in laws, as well as the community and statewide concerns regarding the establishment of medical marijuana dispensaries, it is necessary for the City of Claremont to study the potential impacts such facilities may have on the public health, safety, and welfare.

"7. Based on the foregoing, the City Council finds that issuing permits, business licenses, or other applicable entitlements providing for the establishment and/or operation of medical marijuana dispensaries, prior to the completion of the City of Claremont's study of the potential impact of such facilities, poses a current and immediate threat to the public health, safety, and welfare, and that therefore a temporary moratorium on the issuance of such permits, licenses, and entitlements is necessary."

■ A local government's authority to adopt an interim ordinance prohibiting particular land uses is expressly granted by Government Code section 65858, which authorizes the legislative body of a city to "adopt as an urgency measure an interim ordinance prohibiting any uses that may be in conflict with a contemplated general plan, specific plan, or zoning proposal that the legislative body, planning commission or the planning department is considering or studying or intends to study within a reasonable time." (Gov. Code, § 65858, subd. (a).) The City's adoption of the interim ordinance imposing a temporary moratorium on medical marijuana dispensaries came within the scope of this authority.

IV. *Validity of Injunction*

Defendants contend the trial court was not authorized to issue a permanent injunction against them because the basis of that injunction—operating without a business license and permit—was the subject of an administrative appeal that had not yet been heard. Defendants further contend the City's dismissal of their appeal from the denial of their applications for a business license and permit, based on the City's subsequent enactment of the moratorium, denied them their due process rights, and that the trial court erred by determining such dismissal was proper.

■ The City could properly dismiss defendants' appeal from the denial of their applications for a business license and permit based on the enactment

of the moratorium. "Governmental agencies may generally apply new laws retroactively where such an intent is apparent. [Citation.]" (*Davidson v. County of San Diego* (1996) 49 Cal.App.4th 639, 646 [56 Cal.Rptr.2d 617].) Although "zoning ordinances may· not operate retroactively to divest a permittee of vested rights previously acquired . . . '[i]t is well settled that the new ordinance may operate retroactively to require a denial of the application, or the nullification of a permit already issued, provided that the applicant has not already engaged in substantial building or incurred expenses in connection therewith.' " (*Igna v. City of Baldwin Park* (1970) 9 Cal.App.3d 909, 913–914 [88 Cal.Rptr. 581].)

The City's reliance on the moratorium as the basis for dismissing defendants' appeal did not deprive defendants of any vested right. At the time the moratorium was enacted, defendants' applications for a business license and permit had already been denied. The trial court found that defendants did not incur substantial expenses prior to the denial of their applications, and substantial evidence supports that finding. After the City denied defendants' applications for a business license and permit, and after City representatives told defendants that their proposed use would not be permitted, defendants commenced operating a medical marijuana dispensary without a license or permit, in violation of the City's municipal code. That violation was the subject of the injunction issued by the trial court. Neither the issuance of the injunction nor the dismissal of defendants' administrative appeal deprived defendants of any vested right.

*Morton v. Superior Court of San Mateo County* (1954) 124 Cal.App.2d 577 [269 P.2d 81], on which defendants rely, is distinguishable. In that case, a quarry appealed from a judgment enjoining its operations because it was operating without a permit and hence, constituted a nuisance per se. The quarry had been operating for 25 years at the time the County of San Mateo enacted an ordinance requiring an operating permit. When the ordinance took effect, the quarry applied for a permit, which the county planning commission denied. The quarry filed a petition for writ of mandate challenging the validity of the county's denial of its permit application. While the mandamus proceeding was still pending, the county obtained an injunction prohibiting continued operation of the quarry. The Court of Appeal reversed, concluding that the quarry could not be deprived of its "vested right" "to engage in a lawful business" while the mandamus proceeding was still pending. (*Id.* at pp. 587–588.) Here, in contrast, defendants had no "vested right," their operation of CANNABIS was not lawful, and they did not challenge any of the City's actions in a mandamus proceeding. *Morton* is thus inapposite.

Defendants were not entitled to commence operating a medical marijuana dispensary without first obtaining a business license and permit.

## V. *Scope of Injunction*

Defendants challenge the scope of the injunction issued against them, claiming that it is overbroad because it precludes them from operating a medical marijuana dispensary anywhere within the City. They claim the injunction should have been limited to the specific location at which they operated CANNABIS. Defendants further contend the injunction is overbroad because it assumes the City's zoning regulations will never change and that defendants' operations will never comply with any future zoning regulations.

A trial court's decision to grant a permanent injunction rests within its sound discretion and will not be disturbed without a showing of a clear abuse of discretion. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912 [117 Cal.Rptr.2d 631].) "The exercise of discretion must be supported by the evidence and, 'to the extent the trial court had to review the evidence to resolve disputed factual issues, and draw inferences from the presented facts, [we] review such factual findings under a substantial evidence standard.' [Citation.] We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge all reasonable inferences to support the trial court's order. [Citation.]" (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390 [33 Cal.Rptr.3d 644].)

The injunction issued by the trial court precludes defendants "from operating a medical marijuana dispensary within the City of Claremont, as long as the City's Moratorium against the establishment of medical marijuana dispensaries remains in effect, and unless and until the City grants Defendants a business license and issues Defendants a tax certificate authorizing them to operate a medical marijuana dispensary." The injunction by its terms is limited to the duration of the moratorium. It does not bar defendants from operating a medical marijuana dispensary under future zoning regulations.

That the injunction encompasses the entire City, rather than just the specific location where CANNABIS was operated, does not make it overbroad. Given defendants' disregard of the City's licensing and zoning laws, and Kruse's stated intent to operate and actual operation of CANNABIS in violation of those laws, the injunction issued was not an abuse of the trial court's discretion. (*Shapiro v. San Diego City Council, supra*, 96 Cal.App.4th at p. 912.)

## DISPOSITION

The judgment is affirmed. The City is awarded its costs on appeal.

Doi Todd, Acting P. J., and Ashmann-Gerst, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 2, 2009, S176912.