Filed 8/27/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| KIMBERLY R. OLSON, | C089953 |
| Plaintiff and Appellant, | (Super. Ct. No. SCCVCV2019474) |
| v. | |
| HORNBROOK COMMUNITY SERVICES DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Siskiyou County, JoAnn Bicego, Judge.  Affirmed.

Kimbery R. Olson, in pro. per., for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Joseph A. Salazar, Jr., and Ryan Matthews, for Defendant and Respondent.

Rob Bonta, Attorney General, Robert W. Byrne, Senior Assistant Attorney General, Russell B. Hildreth, Supervising Deputy Attorney General, Amicus Curiae Brief of State Water Resources Control Board, upon the request of the Court of Appeal.

Plaintiff Kimberly R. Olson appeals from the trial court's denial of her motion for preliminary injunction. In essence, Olson seeks to enjoin defendant Hornbrook Community Services District (district) from having its employee, defendant Clint Dingman, perform "certain water-related duties (such as adding Chlorine to the [district's] water, operating the Chlorination equipment, and doing water testing), or being paid to do so." (Underlining omitted.) Olson asserts Dingman is required to be certified by the State Water Resources Control Board (board) under the operator certification program (Health & Saf. Code,[1] § 106875 et seq.) (program) as both a water treatment plant operator and a water distribution system operator to perform such duties and, because he is not certified as such, the district and Dingman (collectively defendants) have been violating and continue to violate several provisions of the Health and Safety Code. She further asserts "Dingman's illegal operation of the [district's] facilities ha[s] resulted in toxic and offensive water, resulting in public and private nuisances, and waste of taxpayer funds."

We glean from the trial court's settled statement that it denied the preliminary injunction motion because Olson failed to show a strong likelihood of success on the merits, the injunction would not maintain the status quo, and the balance of hardships tipped in favor of Dingman. On appeal, Olson argues: (1) the trial court committed prejudicial evidentiary error by admitting the declaration of Kevin Dixon in opposition to her motion; (2) the trial court's finding that "Dingman could operate the [district's] water treatment and distribution facilities (including by the addition of Chlorine to the water) despite not having any of the certifications/licenses required by Health and Safety Code [sections] 106878, and 106885" is not supported by substantial evidence; (3) the trial court's finding "that Dingman 'would not get a paycheck', and so (on that sole basis) the

---

[1]     All further section references are to the Health and Safety Code unless otherwise stated.

balance of hardships tipped against granting the motion" is not supported by substantial evidence; and (4) the district is under a mandatory duty to abide by sections 106876, 106878, and 106885.

We do not reach the merits of Olson's arguments because we conclude judicial abstention is appropriate under the facts of this case.[2] The preliminary injunction Olson sought would have required the court to assume the functions of the board. We thus affirm the order denying her preliminary injunction motion.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Litigation And Ruling On The Preliminary Injunction Motion*

Olson filed a complaint for mandamus, declaratory relief, temporary and permanent injunctive relief, waste of taxpayer funds, and nuisance against defendants. She alleged, among other things, Dingman is "an employee of the [district] who, among other tasks, performs operations at the [district's] water treatment facility, and operates the water production and distribution system for the town of Hornbrook, CA." (Fn. omitted.) Olson asserted that, to perform the foregoing tasks, Dingman must be certified by the board as both a water distribution system operator and a water treatment plant operator, but he has not possessed a water distribution system operator certificate since

---

[2]     None of the parties specifically raised or addressed the doctrine of judicial abstention. As explained *post*, however, the board raised the related doctrine of primary jurisdiction in its amicus curiae brief and Olson responded to that argument and the board's assertion that concerns and complaints regarding certification violations are more appropriately resolved administratively. Given that Olson had the opportunity to brief and did address the issue of comity between the trial court and the board (i.e., jurisdiction), we did not request further supplemental briefing from the parties as to the specific application of the judicial abstention doctrine. (*People v. Alice* (2007) 41 Cal.4th 668, 677 [Government Code section 68081 does not require supplemental briefing when the parties had "the opportunity to brief any issues that are fairly included within the issues actually raised"].)

October 1, 2018, and has never possessed a valid water treatment plant operator certificate.

Olson's waste of taxpayer funds cause of action is premised on the allegation that the district expended and continues to expend "monies to pay Clint Dingman for the performance of criminal acts" because Dingman was and is not certified under the program. Similarly, as to her nuisance cause of action, Olson alleged she has "suffered poor water quality at her home" "[a]s a result of the illegal actions of the Defendants," presumably due to Dingman's failure to secure appropriate certification from the board.

Olson filed an accompanying motion for preliminary injunction, seeking to enjoin: (1) defendants "from continuing to engage in criminal actions in violation of Health and Safety Code [sections] 106876, 106877, 106878, and/or 106885"; (2) defendants "from operating the [district's] water production, treatment, and/or distribution systems by any means other than the use of certified Water Treatment Operators and Water Distribution Operators in full compliance with the provisions of Health and Safety Code [sections] 106876, 106877, 106878, and/or 106885"; (3) the district "from permitting Clint Dingman to operate any water production, treatment, and/or distribution system belonging to the [district] until such time as he obtains the applicable and appropriate valid, unexpired Water Treatment and/or Distribution Operator certification(s) from the State of California"; and (4) defendants "from acting to pay any bill, invoice, employee payroll, or other compensation, to Defendant Clint Dingman for 'services' performed by him which are, or may be, in violation of Health and Safety Code [sections] 106876, 106877, 106878, and/or 106885." (Underlining omitted.) Olson requested "[t]hat the injunction continue until such time as its conditions are met and upon a showing thereafter of good cause to this Court, or the conclusion of the litigation." Olson submitted her declaration in support of the motion.

Defendants opposed the motion, raising several evidentiary objections to Olson's declaration and asserting the motion would not preserve the status quo, an injunction may

not issue to enforce a penal law, and no admissible evidence showed defendants had violated the law. Defendants submitted the declaration of Kevin Dixon in support of their opposition. Dixon declared, in pertinent summary: he is a consultant for the district with a valid water distribution system operator certificate; the district's system is not a water treatment system; Dingman does not need "a license or certificate for what he does . . . as a properly trained person under [Dixon's] direction"; Dixon's "arrangement with the [district] is commonplace for small remotely-located water systems such as this, where it is not financially feasible for them to continually have a licensed Operator on-site"; the district's "water system is currently being operated in a proper and lawful manner and is providing potable water of an acceptable quality to its customers"; and the district's "water system had some problems with water quality after the 2018 fire damaged some of its facilities," he attempted to test Olson's water but was unable to gain access, and he tested Olson's neighbor's water "and found it to be acceptable."

In reply, Olson submitted several objections to Dixon's declaration and filed the declaration of Peter Harrell in support of her motion. We do not recount the specifics of Harrell's declaration given our disposition of this matter. Suffice it to say, in pertinent summary, Harrell declared he is certified as both a water treatment plant operator and a water distribution system operator and is familiar with the district's system. Harrell further declared a person must be certified as a water treatment plant operator to add chlorine to water and to test drinking water for chlorine residuals and other properties, and "[t]he [district] has a water treatment plant."

After the trial court denied the motion for preliminary injunction, Olson sought a certified settled statement in lieu of a reporter's transcript for appeal pursuant to California Rules of Court, rule 8.137. In her proposed settled statement, Olson explained she sought the preliminary injunction based on defendants' violations of the program requirements. Her proposed settled statement provided the trial court denied the motion because: "The Court determined that Dingman was not required to have those

certifications to undertake his duties so long as he was being trained and/or directed by another, <u>certified</u> operator, Kevin Dixon, and that as a result, Plaintiff could not show a strong likelihood of prevailing on her claims. The Court also determined that the proposed injunction would not maintain the status quo, and that the balance of hardship tipped in favor of Clint Dingman, because he would not get a paycheck if the injunction were to be granted."

Defendants filed an opposition to Olson's proposed settled statement, arguing in pertinent part that the trial court "did not state that ' . . . Dingman was not required to have those certifications to undertake his disputed duties for the [district] so long as he was being trained and/or directed by another, certified operator . . . .' " Defendants stated the trial court instead "held that as a '**trained** person', Dingman was allowed the [*sic*] perform the particularly [*sic*] duties assigned to him by the system operator."

Olson replied that defendants' opposition to the proposed settled statement was without merit and nitpicky.

The trial court signed the settled statement certifying it denied the preliminary injunction motion based on the statement proposed by Olson, defendants' opposition thereto, and other documents, which collectively provided "an accurate summary of the testimony and other evidence that is relevant to the appellant's reasons for the appeal." The trial court added it was unable to provide a court reporter for the proceeding and did not retain notes of the hearing. The trial court did, however, "conduct[] independent research with regard to the issues," but "[g]iven the passage of time" did "not have an independent recollection of the argument presented at the hearing or the specific basis for the ruling made."[3]

---

[3]    The law and motion minutes from the hearing on the motion merely indicate the parties were present, the parties were given an opportunity to argue, and the trial court denied the motion.

Given the parties' dispute as to the specifics relating to the trial court's reasoning, the trial court's incorporation of the parties' adverse positions in that regard, and the trial court's express statement it had no independent recollection of the grounds for its decision, we glean from the settled statement that the trial court denied the preliminary injunction motion because Olson failed to show a strong likelihood of success on the merits, the injunction would not maintain the status quo, and the balance of hardships tipped in favor of Dingman.

II

*The Board's Amicus Curiae Brief On Appeal*

We requested an amicus curiae brief from the board because it is charged with regulating, administering, and enforcing the program.[4]  (See § 106875 et seq.; Cal. Code Regs., tit. 22, § 63750.10 et seq.)  As requested by this court, the board filed an amicus curiae brief, which was supported by the declarations of Barry Sutter and Darrell Jennings II.  The board stated Olson had "filed an administrative complaint with the State Water Board making the same allegations about water system operations that she has alleged in this action."  It further said, "the relevant Hornbrook District employee now has a valid certificate to operate the District's water treatment system" and Olson's "allegations of wrongdoing will be addressed in the pending administrative action."  "Because the administrative matter is pending, the [board noted it would] refrain from drawing conclusions about the evidence in the court action, which is, in any event, incomplete."

In the board's view, the "issues raised in Olson's motion for preliminary injunction are moot."  The board explained Dingman's water distribution system operator

---

[4]     We requested that the board file an amicus curiae brief by May 3, 2021, and directed our clerk's office to provide a copy of the briefs and the record on appeal to the board in preparation of doing so.

certificate expired on October 1, 2018, and the board issued him new water treatment plant and water distribution system operator certificates on December 1, 2020. The board stated that, "[a]s a Grade 1 water distribution operator, Dingman currently is certified at the appropriate grade to be a shift operator at the Hornbrook District."

The board further argued Olson's "action is not the appropriate vehicle to evaluate certification status or any issues related to any past or ongoing certification-related violations" because "[t]here is no private cause of action to enforce a certification requirement." "In [its] view, the evidence in the record, including the trial court declarations, is not sufficient to allow a determination whether all alleged actions were taken in violation of the certification requirements. The technical complexity of making these determinations further underscores why private-party complaints about certification status are properly resolved through administrative complaints to the Board, and not through private actions filed directly in the courts." Alternatively, the board suggested we "stay this action pending resolution of the administrative proceeding" in accordance with the primary jurisdiction doctrine. (Citing *Villanueva v. Fidelity National Title Co.* (2021) 11 Cal.5th 104, 126, fn. 12.)

We provided the parties an opportunity to respond to the board's brief.[5] Olson submitted a response; defendants did not. Olson objected to the board's declarations because the declarations were "not considered by the trial court below," did "not appear in the record," and, in her opinion, were conclusory, lacked foundation, and did not state facts demonstrating personal knowledge. She disagreed the matter is moot and argued she is not precluded from seeking the remedies raised in her complaint. Olson believes the board admitted defendants' conduct was illegal and it failed to address the trial court's statutory interpretation errors. She further believes she stated sufficient facts

---

[5] We granted Olson an extension of time to respond; she filed her response to the board's brief on June 23, 2021.

supporting her preliminary injunction request, because the motion "sound[s] primarily in nuisance (and negligence insofar as the mandatory duty of the [district] and Dingman)."

Olson asserted "there are no pending 'administrative proceedings' preventing assumption of the courts' jurisdiction." (Capitalization, bolding, and underlining omitted.) She countered that the primary jurisdiction doctrine is inapplicable because the board failed to introduce evidence as to the existence of a pending administrative proceeding. And, she asserted there is no procedurally mandated process "for dealing with citizen 'complaints' about water operators who violate the laws cited in the Complaint," and she did not have to exhaust administrative remedies or, if she did, "she would be excused from completing it on the basis of futility." Although Olson disagreed with the board's use of the term "administrative complaint," she did not refute the board's statement that she had previously raised the same allegations at issue in this litigation in communications with the board.

## DISCUSSION

A preliminary injunction is an equitable interim remedy (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 454) and "does not constitute an adjudication of the ultimate rights in controversy" (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286). "In deciding whether to issue a preliminary injunction, a trial court weighs two interrelated factors: the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction. [Citation.] 'Generally, the ruling on an application for preliminary injunction rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal absent a showing that it has been abused.' " (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999.) " '[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record.' " (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1164, fn. 3.)

At the outset, we do not address the board's mootness assertion and Olson's opposition thereto, or Olson's evidentiary and procedural objections to the declarations submitted by the board in support of its amicus curiae brief. Even if the matter is moot, we exercise our discretion to consider whether the preliminary injunction motion was properly denied under the continuing public importance exception because our application of the judicial abstention doctrine may "affect future proceedings between the parties[,[6]] will have some precedential consequence in future litigation generally" (*In re David B.* (2017) 12 Cal.App.5th 633, 654), and "may provide much-needed guidance for 'the orderly administration of justice' " (*In re William M.* (1970) 3 Cal.3d 16, 25).[7]

To promote comity between courts and agencies, "[t]here are several different but closely related doctrines that either require or permit judicial deference to administrative agencies." (*Bradley v. CVS Pharmacy, Inc.* (2021) 64 Cal.App.5th 902, 911.) One such doctrine is judicial abstention,[8] which provides "a court may abstain from adjudicating a suit that seeks equitable remedies if 'granting the requested relief would require a trial

---

[6] In her response to the board's amicus curiae brief, Olson stated Dingman's current certifications under the program do "not permanently resolve the issue [between the parties] since those certifications will expire in the future with no guarantees Dingman will be able to renew them (having failed to do so at least once already), or that the [district] will not at some point hire someone else without licenses."

[7] We further decline the board's invitation to determine whether a private right of action exists as to violations of the program because this appeal pertains only to the equitable relief sought via the motion for preliminary injunction, which we resolve under the doctrine of judicial abstention. The causes of action asserted in Olson's complaint are not at issue in this appeal.

[8] Another related doctrine is primary jurisdiction, which "applies ' " 'where a claim is originally cognizable in the courts' " ' but involves issues ' " 'which, under a regulatory scheme, have been placed within the special competence of an administrative body.' " ' " (*Bradley v. CVS Pharmacy, Inc.*, *supra*, 64 Cal.App.5th at p. 912, italics omitted.) When primary jurisdiction applies, "the ' " 'judicial process is suspended pending referral of such issues to the administrative body for its views.' " ' " (*Ibid.*)

court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency.' " (*Blue Cross of California, Inc. v. Superior Court* (2009) 180 Cal.App.4th 1237, 1258.) "Courts may [also] abstain when an administrative agency is better equipped to provide an alternative and more effective remedy." (*Alvarado v. Selma Convalescent Hospital* (2007) 153 Cal.App.4th 1292, 1306.) Abstention is further appropriate if " 'the lawsuit involves determining complex economic policy, which is best handled by the Legislature or an administrative agency,' " or if " 'granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress.' " (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 496.) Abstention is, however, "generally appropriate only if there is an alternative means of resolving the issues raised in the [matter]." (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1369.)

Olson's preliminary injunction motion directly implicates the regulatory and enforcement functions of the board and its expertise in administering the program. The board is tasked with examining and certifying persons as to their qualifications to operate water treatment plants and water distribution systems. (§ 106875, subds. (a), (b).) Such certifications must indicate the classification of water treatment plant and/or distribution system a person is qualified to operate. (*Ibid.*) Water distribution systems and water treatment facilities are classified by assigning to each a numerical level value that corresponds to the technical expertise required to operate the system or facility. (Cal. Code Regs., tit. 22, §§ 64413.1, 64413.3.)

A person "in responsible charge" of a water distribution system or water treatment plant must possess the pertinent valid, unexpired operator certificate equal to or greater than the classification of the water distribution system or water treatment plant he or she oversees. (§ 106885, subds. (a)(2), (b)(2).) In contrast, a person who "operates" a water distribution system or water treatment plant shall possess the pertinent valid, unexpired

operator certificate "of the appropriate grade in accordance with the regulations adopted [by the board] pursuant to Section 106910." (§ 106885, subds. (a)(1), (b)(1).) The board adopted regulations identifying the minimum certification requirements for operators (including chief operators and shift operators) by the classification assigned to a water treatment facility or water distribution system. (Cal. Code Regs., tit. 22, §§ 63765, subds. (a)-(b), 63770, subd. (a).) The board further adopted regulations identifying and specifying operator examination and certification criteria (*id*., §§ 63775-63835) and governing certification renewals, delinquent renewals, and fees (*id*., §§ 63840-63850).

Section 106876, subdivision (d) defines " '[o]perates a water distribution system' " as "actions or decisions to control the quality or quantity of drinking water in a water distribution system and includes both of the following: [¶] (1) Supervision of other persons operating a water distribution system. [¶] (2) Any activity designated by the state board, in its regulations to implement this article, as an activity that may only be performed by a person with a water distribution operator certificate."

The board adopted a regulation stating "[w]ater systems shall utilize only certified distribution operators to make decisions addressing the following operational activities: [¶] (1) Install, tap, re-line, disinfect, test and connect water mains and appurtenances. [¶] (2) Shutdown, repair, disinfect and test broken water mains. [¶] (3) Oversee the flushing, cleaning, and pigging of existing water mains. [¶] (4) Pull, reset, rehabilitate, disinfect and test domestic water wells. [¶] (5) Stand-by emergency response duties for after hours distribution system operational emergencies. [¶] (6) Drain, clean, disinfect, and maintain distribution reservoirs." (Cal. Code Regs., tit. 22, § 63770, subd. (b).)

The regulation further provides "[w]ater systems shall utilize either certified distribution operators or treatment operators that have been trained to make decisions addressing the following operational activities: [¶] (1) Operate pumps and related flow and pressure control and storage facilities manually or by using a system control and data acquisition . . . system. [¶] (2) Maintain and/or adjust system flow and pressure

requirements, control flows to meet consumer demands including fire flow demands and minimum pressure requirements." (Cal. Code Regs., tit. 22, § 63770, subd. (c).) And, "[w]ater systems shall utilize either certified distribution operators or treatment operators to make decisions addressing the following operational activities: [¶] (1) Determine and control proper chemical dosage rates for wellhead disinfection and distribution residual maintenance. [¶] (2) Investigate water quality problems in the distribution system." (*Id*., subd. (d).)

Section 106876, subdivision (e) defines " '[o]perates a water treatment plant' " as "actions or decisions to control the performance of one or more drinking water treatment processes and includes both of the following: [¶] (1) Supervision of other persons operating a water treatment plant. [¶] (2) Any activity designated by the state board, in its regulations to implement this article, as an activity that may only be performed by a person with a water treatment operator certificate." The term " 'water treatment process' " is defined as "a process that improves the physical, chemical, biological, or radiological quality of water in order to render the water acceptable for use as drinking water" and includes, among other things, chemical addition, disinfection, and blending. (§ 106876, subd. (m).) The board's regulations provide that sample collection and field tests of, among other things, chlorine may be performed by uncertified personnel trained to perform such duties by the board, a certified laboratory, or a certified and appropriately trained operator. (Cal. Code Regs., tit. 22, § 64534, subd. (b).)

Section 106878 identifies the actions constituting violations punishable as misdemeanors or for which civil liability may be imposed, including operating a water treatment plant or a water distribution system without holding the pertinent valid, unexpired operator certificate. (§ 106878, subd. (a)(1)-(2).) Civil liability may be imposed administratively only by the board or the Attorney General in an action in superior court upon request of the board. (§ 106879, subd. (a).) Section 106877 further delineates the grounds upon which administrative disciplinary actions may be taken by

the board against certificate holders -- e.g., suspending, revoking, or refusing to grant or renew a certificate, reprimanding a certificate holder, or placing a certificate holder on probation.  (§ 106877, subds. (a), (b).)  Section 106879, subdivision (b) provides that the remedies identified in the program statutes do "not supersede or limit, any other remedy, civil or criminal, except that civil liability may not be imposed both administratively and by the superior court for the same violation."

The equitable relief Olson seeks is grounded in precluding Dingman from (1) performing duties for the district that Olson asserts require certification under the program and (2) being paid to perform such tasks.  To adjudicate Olson's motion, the trial court had to determine her likelihood of success on the merits -- more specifically, whether the tasks Dingman performs for the district require certification under the program because that issue is the genesis of Olson's claims.  The board, not the trial court, is in the best position to make that determination because the board is tasked with determining when certification is required.  As demonstrated by the board's amicus curiae brief, that question is fact-specific and complex considering the statutory and regulatory scheme detailed *ante*.

In its amicus brief, the board explained "[a] person who does not hold the appropriate operator certificate may perform supporting, non-operational duties at a water distribution system, subject to any other applicable requirements."  Here, however, "the trial court declarations and the documentation provided do not give a full description of employee actions, the reasons for those actions, or any other potentially relevant information regarding those actions" to make an appropriate compliance determination.  Thus, although it appears Dingman was engaged in some tasks that "*may* have required a current, valid operator certificate," "[t]he evidence is unclear as the specifics about what the employee was doing.  [¶]  To determine whether an activity is operational (requiring certification), a court must be provided with some details about the activity, and not simply a general description.  For example, simply knowing that an employee has opened

a fire hydrant and thereby moved water through a line does not provide sufficient information to make the required determination; rather, a court must know whether opening the fire hydrant affected the quality or characteristics of drinking water in the system by removing system water and replacing it with new water. On the other hand, briefly opening a fire hydrant to check system pressure or flow, or opening a fire hydrant for other reasons while properly coordinating with the appropriate certified operator would be non-operational duties and not require an operator certificate." (Italics added.)

As another example, the board said "determining whether changing the 'barrel' of chlorine that feeds the chlorine injector to the water system is an operational duty requires additional information because the disinfection process and change to the quality or characteristics of drinking water in the water system does not occur until chlorine is added to the drinking water. [Citing Harrell's declaration in support of Olson's preliminary injunction motion.] If the injector was offline and not feeding chlorine to the system, then changing the 'barrel' would not be an operational duty. Turning the injector back on after changing the 'barrel' or taking any other action that effects the rate of chlorine being added to the drinking water, however, is an operational duty.

"The trial court declarations do not provide enough information to determine where Dingman added the chlorine tablets. For example, the Harrell declaration states that the timesheets show that Dingman added chlorine to the water system, but they do not show where Dingman added chlorine. [Citation.] Adding chlorine to a chlorine solution tank that is not delivering chlorine to the water would be a non-operational duty. Adding chlorine to drinking water either in the distribution system or well, or to the solution tank that is currently delivering chlorine to the drinking water, however, is an operational duty because of its effect on the quality or characteristics of the drinking water and the water system."

In the board's opinion, "[b]ased on the information in the record, refilling chlorine solution tanks, changing and repairing chlorine pumps, changing chlorine gas cylinders,

and adding salt to the chlorine generator all appear to be non-operational duties that are performed while the various chlorine injector systems are offline and not actively feeding the water system." Further, "[r]eading meters appears to be a non-operational duty because it is simply gathering and recording information." The board also explained that "[a] person who is not certified as a water treatment operator or a water distribution operator also can obtain and test water for residual chlorine content if the person has been trained do so by the State Water Board, a certified laboratory, or a certified water treatment operator or certified water distribution operator who has been trained by the State Water Board or a certified laboratory." (Citing Cal. Code Regs., tit. 22, § 64534, subd. (b).)

The board's examples and explanations demonstrate the regulatory knowledge and expertise needed to resolve the competing assertions as to whether Dingman's actions to refill chlorine solution tanks, change and repair chlorine pumps, change chlorine gas cylinders, add chlorine tablets, add salt to the chlorine generator, read meters, and obtain and test water for residual chlorine content require certification. It is a function of the board to distinguish between operational and nonoperational tasks and to identify which tasks require certification. (§ 106876, subds. (d), (e); Cal. Code Regs., tit. 22, § 63770, subds. (b)-(d).) The board is also in the best position to determine whether the district's system is/includes a water treatment plant within the meaning of the statutes and regulations, as disputed in the Dixon and Harrell declarations. That is because it is a function of the board to determine the level of technical expertise required to operate the different categories of systems or facilities. (Cal. Code Regs., tit. 22, §§ 64413.1, 64413.3.)

Olson attempts to demerit the board's examples and explanations, stating the board's argument "essentially that the case is too complex for the Court to handle and that more evidence should be presented by the parties, is fallacious in the face of acknowledgement of prohibited conduct by Dingman, and when properly considered as a

nuisance, illegal contract, and waste of public funds action." Olson further believes "there is clearly sufficient evidence presented in the record to establish the facts that Dingman did not have proper licenses at the time he was working for the [district], that both he and the [district] knew that . . . , that Dingman added chlorine to the [district's] water system, and that as a result, excessive, dangerous levels of Chlorine were present in the water, which harmed Olson and her property, and so establish all of the necessary elements for a nuisance cause of action (and injunction)." (Fn. omitted.) In the accompanying footnote, Olson argued the board admitted Dingman did not previously have proper certifications.

Contrary to Olson's claims, and as the board explained, the board "refrain[ed] from drawing conclusions about the evidence in the court action." The board said some of the tasks Dingman performed "*may* have required a current, valid operator certificate," but that does not equal an admission that Dingman and the district violated the program requirements, as Olson suggests. (Italics added.) The board clearly and repeatedly stated more information and detail are needed to make such a determination.

Whereas Olson believes the issue presented by her preliminary injunction motion is easily resolved by a court (because, in her view, her arguments and evidence establish certification is required), we disagree. The board's amicus curiae brief highlights the complexity in determining which tasks are operational (requiring certification) and which are non-operational (not requiring certification). Principles of comity apply under these facts.

The board has an interest in securing uniformity in determinations as to which tasks must be performed by certified operators. In that regard, the board knows which questions to ask, the nuances distinguishing operational and non-operational tasks, and the scope of the tasks requiring certification. The board is better equipped to determine individual compliance with the program requirements, and judicial abstention would assist in avoiding encroachment on the board's administrative functions. (Cf. *Arce v.*

*Kaiser Foundation Health Plan, Inc.*, *supra*, 181 Cal.App.4th at pp. 499-500 [abstention was inappropriate because resolution of the claim merely required the court to interpret relevant statutory and contractual provisions].) The board "has the power, expertise and statutory mandate to regulate and enforce [the program]," thus providing an "alternative and more effective means of ensur[ing] compliance with [the program's requirements]." (*Alvarado v. Selma Convalescent Hospital*, *supra*, 153 Cal.App.4th at p. 1306; cf. *Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at pp. 1369-1370 [judicial abstention inappropriate where "the only action the Legislature ha[d] taken in regard to the sale of non-temperature-adjusted fuel [was] adopting a statute directing the [California Energy Commission] to conduct a cost-benefit analysis of implementing [automatic temperature compensation] fuel pumps at retail stations" and "no government entity ha[d] attempted to resolve potential harms caused by the sale of non-temperature-adjusted fuel at the retail level or otherwise established an alternative mechanism for addressing those harms"].)

For these reasons, we conclude judicial abstention is appropriate. The preliminary injunction Olson sought would have required the court to assume the functions of the board. We thus affirm the order denying her preliminary injunction motion.

DISPOSITION

The order denying Olson's motion for preliminary injunction is affirmed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)-(2).)

/s/_____
Robie, Acting P. J.

We concur:

/s/_____
Hoch, J.

/s/_____
Renner, J.