[No. E042772. Fourth Dist., Div. Two. July 30, 2008.]

CITY OF CORONA, Plaintiff and Respondent, v.
RONALD NAULLS et al., Defendants and Appellants.

[black redaction bars]

## COUNSEL

Ackerman, Cowles & Lindsley, Richard D. Ackerman, Michael W. Sands; Law Offices of James Anthony and James Anthony for Defendants and Appellants.

Best, Best & Krieger, Jeffrey V. Dunn, Dean Derleth and Marc S. Ehrlich for Plaintiff and Respondent.

## OPINION

**MILLER, J.**—The trial court issued a preliminary injunction preventing Ronald Naulls and his business enterprise, Healing Nations Collective (HNC), a medical marijuana dispensary operating within the City of Corona (the City), from conducting any further operations. The court found that, because HNC was "operating as a non-permitted, non-conforming use," its operation "constitutes a nuisance *per se*, which the City may abate by seeking injunctive relief in this Court." On appeal, Naulls and HNC challenge the sufficiency of the evidence to support the order, contending the court's finding as to "non-permitted, non-conforming use" is based on a faulty legal premise. We affirm.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

Naulls is president and chief executive officer of HNC, a California mutual benefit nonprofit corporation. On May 2, 2006, Naulls applied for a business

---

[1] While this appeal was pending, the City filed a motion for judicial notice as to relevant portions of the City's municipal code: the application for business license tax filed by Naulls, the City's North Main Street Specific Plan (the Specific Plan) encompassing the location of HNC, and records of the United States District Court reflecting enforcement activity and criminal proceedings against Naulls and HNC. Thereafter, the City filed a motion to take additional evidence pertaining to the status of the aforementioned criminal proceedings. Rulings on both motions were reserved for consideration with the appeal. We now grant the request for judicial notice as to all documents except those pertaining to criminal proceedings in federal district court. We also deny the motion to take additional evidence with regard to those criminal proceedings.

license to operate HNC as a new business in the City. The City uses a preprinted form which states, in red text, the following: "The City of Corona Municipal Code requires that all businesses pay a business tax, but such payment does not authorize an applicant to do business in the City. All Businesses must comply with all city codes and must have the Department of Planning approval prior to opening." In the portion of the license application calling for a description of the proposed business activity, Naulls penned, "Misc. Retail." Naulls signed the application, declaring under penalty of the laws of California that the information provided was true and correct.

Before submitting his application, Naulls visited the City's business license department and spoke with Carol Warfield, a customer service representative. According to Warfield, although the application does not enumerate the types of businesses eligible for licensure, the City expects the applicant to truthfully describe the nature of his or her business in the space provided. In response to Warfield's inquiry as to the type of business he was planning on operating, Naulls said that he would be opening a " 'miscellaneous retail' establishment" and would be selling " 'miscellaneous medical supplies.' " Warfield reviewed the application and, based upon the information provided, issued Naulls a receipt, which served as a temporary business license. She would not have issued a business license to Naulls had she known that the true nature of HNC's operations was "to cultivate, store, sell and distribute marijuana."

On June 20, 2006, Naulls telephoned the City's planning director, Peggy Temple, to schedule a meeting "regarding establishing a business in the City." At first reluctant to respond to Temple's inquiry as to the nature of the business, Naulls eventually admitted that he operated a medical marijuana establishment. At their meeting two days later, Temple informed Naulls that marijuana dispensaries were not, and never have been, a permitted land use under the City's zoning laws. Temple also then informed Naulls that, at a special meeting held the day before, the City had enacted a moratorium on medical marijuana dispensaries. Naulls admitted that prior to opening his dispensary he was informed by a planning department employee that the proposed use was not permitted and that, in the event he proceeded to open the business, he would be subject to law enforcement.

On July 7, 2006, legal counsel for the City wrote to Naulls informing him that, among other things, the City had imposed a moratorium on the establishment of medical marijuana dispensaries. Further, because HNC had been established unlawfully, it was not exempt even though its application had already been filed. Naulls was directed to cease distributing marijuana, either from his business or otherwise. In a letter dated July 14, 2006, Naulls's

attorney referenced a telephone conversation with the City's counsel, reiterating his position that "the clinic is a prior legal non-conforming use. If you are aware of any authority supporting the position that anything not permitted under the zoning code is therefore prohibited, please make me aware of it."

On August 8, 2006, counsel for the City replied, informing Naulls's attorney that HNC's business license was invalid because he had falsified his application, medical marijuana dispensaries were not a permitted use under the City's municipal code and Specific Plan, and HNC failed to comply with the procedures required for establishing a "similar use" zoning designation. Naulls was again directed to cease and desist from operating HNC.

The following day, the City filed the underlying lawsuit, alleging that HNC's operation constituted a public nuisance in violation of Civil Code section 3479. Specifically, the City alleged that use of the premises at which HNC was operating was a nuisance per se under section 1.08.020 of the City's municipal code in that Naulls operated HNC in contravention of sections 5.02.030 (pertaining to business licenses) and 5.02.370, subdivision (B) (pertaining to zoning regulations). The City sought a temporary restraining order to close down HNC's operations, and preliminary and permanent injunctions to prevent use of the premises pending submission of a new business license application and compliance with all federal, state, and local laws.

At a hearing in August, the court denied the City's ex parte application for a temporary restraining order, but set a hearing for September 28, 2006, regarding the City's request that a preliminary injunction issue. Having directed the City to file a new motion, the court remarked it "think[s] there is some probability of a preliminary injunction issuing." The hearing on the City's request for a preliminary injunction was eventually continued, and on October 4, 2006, Naulls filed his answer to the complaint.

In late October, the City filed its motion for a preliminary injunction, asserting various grounds, i.e., (1) notwithstanding the passage of the Compassionate Use Act of 1996 (CUA; Health & Saf. Code, § 11362.5) and the Medical Marijuana Program Act (MMPA), Naulls was operating HNC in violation of the Controlled Substances Act (CSA), as interpreted in *Gonzales v. Raich* (2005) 545 U.S. 1 [162 L.Ed.2d 1, 125 S.Ct. 2195], and (2) Naulls's continued operation of HNC violated provisions of the City's municipal code and Specific Plan with regard to its application for business license and zoning regulations and thus constituted a nuisance per se.

In a declaration in support of the City's motion, Temple alleged that because a medical marijuana dispensary was not a permitted use in any of the zoning areas within the Specific Plan, any other specific plan,[2] or any of the code's zoning provisions, Naulls would have been required to amend the Specific Plan to include his requested use. She asserted: "In order to obtain an amendment of the Specific Plan, Mr. Naulls would be required to submit the requested revisions to the Specific Plan document concerning the location of Healing Nations to the City, submit documentation demonstrating that the owner of the property where Healing Nations is located authorized the requested changes to the Specific Plan, submit development standards applicable to the operation of Healing Nations as a medical marijuana dispensary, and pay all required application and processing fees. Thereafter, City personnel would review the documents submitted to determine if additional information was required. This would be followed by a planning commission public hearing to determine whether the requested amendment was in the City's best interests and complied with the City's general plan. A recommendation would then be made to the city council, which in turn would hold another public hearing to approve or deny the amendment. After the hearing, an ordinance would be adopted either approving or denying the requested amendment, and make findings supporting its decision." Naulls submitted no request to amend the Specific Plan. Alternatively, Naulls could have requested a " 'similar use finding' " pursuant to section 17.88 of the City's municipal code. This would require submission of an application, with supporting documentation, to demonstrate that the proposed use was similar to an existing use with the Specific Plan and was consistent with the City's general plan. Thereafter, proceedings would be scheduled before the planning commission. Naulls never made a request for a similar use finding. As such, HNC's operation within the boundaries of the Specific Plan was an unpermitted and illegal use.

Attached as an exhibit to the City's motion was a printout of materials pertaining to the Specific Plan, which encompassed HNC's location. Chapter No. 4 of the Specific Plan "sets forth permitted uses and development standards for various land use areas" within the districts it covers. The development regulations which govern the Specific Plan supersede the zoning provisions of title 17 of the Corona Municipal Code except to the extent the Specific Plan is silent. In those instances, the municipal code controls. These regulations make no provision for a medical marijuana dispensary as a permitted use. However, "[t]he Commission may, by resolution of record, permit any other uses which it may determine to be similar to those

---

[2] According to Temple, a specific plan "operates as a site specific zoning ordinance governing all land use, development . . . and infrastructure requirements within its boundaries."

[enumerated]; provided such uses are not or will not be dangerous or offensive by reason of the emission of dust, gas, noise, fumes, odors, vibrations, or otherwise in conformity with the intent and purpose of the Zone, and not more obnoxious or detrimental to the public health, safety and welfare, or to other uses permitted in the Zone. See chapter 17.88 in title 17 of the Corona Municipal Code for the procedure."

In opposing the motion, Naulls argued that he substantially complied with the procedure for obtaining a business license and was not required to describe HNC as a medical marijuana dispensary; that HNC should have been zoned as a prior conforming use because it was "grandfathered in" before the City passed its moratorium; and under the CUA, California's nuisance statute does not apply to medical marijuana dispensaries.

After a hearing on December 13, 2006, the court granted the City's motion for preliminary injunction.[3] The court indicated its opinion "that defendants did conceal from the City that this was a medical marijuana dispensary." The court also inferred that Naulls had thereby avoided the requisite procedures for obtaining a variance for a nonconforming use. The court expressly stated that its decision was based upon the declaration of the City's planning director that the use is not permitted and "also . . . upon the absence of any authority that says one way or the other." Accordingly, because any nonenumerated use is presumptively prohibited under the City's municipal code, the operation of HNC constituted a nuisance per se. As directed, the City prepared a statement of decision, which the court signed on February 7, 2007, and filed on February 20, 2007. Pursuant to that decision, the court found that the City was likely to prevail on the merits of its action and ordered Naulls and HNC to cease and desist from conducting any further operations at HNC's designated address.

The trial court found that, based upon Naulls's application, HNC was classified as " 'commercial retail' " for purposes of zoning. However, "medical marijuana dispensary" is not among the uses enumerated in the City's municipal code or the Specific Plan which encompasses HNC's address. Such nonenumerated uses must be presented to the City's planning commission, which holds a hearing, makes findings, and where appropriate, assigns a zoning designation based on the proposed " 'similar use.' " The court found, however, that by virtue of Naulls's failure to disclose the nature of HNC's

---

[3] We note that the court at this juncture questioned whether the City should have taken some other type of action, such as citing Naulls and closing down the dispensary, after which the matter could have been resolved by means of an administrative writ petition under Code of Civil Procedure section 1094.5.

operations, this procedure was not implemented and the City was therefore unable to make a zoning determination based upon the intended use.

The trial court also found that the City's municipal code is drafted in a permissive fashion, i.e., any use not enumerated in the code is presumptively prohibited. Thus, because medical marijuana dispensaries are not enumerated within the code, HNC is operating within the City as a nonpermitted, nonconforming use. As such, HNC's operation is a nuisance per se and may be abated by means of injunctive relief pursuant to Civil Code section 3479 and Code of Civil Procedure section 731.

Further, as to "the hardships stemming from the issuance or non-issuance of an injunction," the court had considered declarations submitted on appellants' behalf as to "the physical conditions of Healing Nations' clientele"; however, it had "also recognize[d] the power of cities to make the determination under what circumstances, if at all, certain uses will be permitted."

## DISCUSSION

At the outset, we emphasize that the sole question before us is the validity of the preliminary injunction. Thus, we refrain from addressing the issues raised in appellants' opening brief, which is devoted exclusively to their position that, notwithstanding the CUA and the MMPA, the City is improperly refusing to allow HNC to operate its medical marijuana dispensary.[4] In fact, not until their reply brief, which reads more like an opening brief than a reply to the City's respondent's brief, do appellants mention the dispositive issue before us. (See *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 763–764 [60 Cal.Rptr.2d 770] (*Reichardt*).) Indeed, nowhere in their opening brief do they so much as allude to the matters set forth in their reply brief.

" 'Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' [Citation.]" (*Reichardt, supra*, 52

---

[4] Appellants argue: "The City is obligated to enforce the CUA and MMPA, regardless of its views of medical marijuana and its Constitutional status. . . . While certain elements of the City may be uncomfortable with medical marijuana, the people of California have spoken, and now the City is required to implement the law. If they want to stop medical marijuana they can go about [it] by taking the case to the state legislature or to the people—they cannot, however, block medical marijuana facilities because they disfavor them. Because California law explicitly allows for medical marijuana collectives, the City must stop stonewalling and allow Healing Nations to operate."

Cal.App.4th at p. 764.) Although the City does, in its respondent's brief, affirmatively state its position the trial court was correct in issuing injunctive relief,[5] it has not been afforded an opportunity to respond to appellants' *particular* assignments of error, including their contentions that "[t]he statement of decision and the record do not provide substantial evidence to support the necessary findings of fact that any violations of the municipal code or any state law occurred," and "[t]he order is based on an incorrect determination of the law regarding land uses not listed in the Corona Municipal Code as either permitted or prohibited (including medical marijuana collective dispensaries legal under state law) . . . ." Nonetheless, we shall address appellants' claims except to the extent, as we now explain, they challenge the adequacy of the court's statement of decision.

Appellants' reply brief brings to light another procedural shortcoming. That is, the arguments contained in the brief are framed in terms of the court's statement of decision, contending that it reflects erroneous conclusions of law and also omits express findings regarding Naulls's violation of various sections of the City's municipal code. However, appellants voiced no challenge to the statement of decision, although they were afforded an opportunity to do so.[6]

"If the party challenging the statement of decision fails to bring omissions or ambiguities in it to the trial court's attention, then, under Code of Civil Procedure section 634, the appellate court will infer the trial court made implied factual findings favorable to the prevailing party on all issues necessary to support the judgment, including the omitted or ambiguously resolved issues. [Citations.] The appellate court then reviews the implied factual findings under the substantial evidence standard. [Citations.]" (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 59–60 [58 Cal.Rptr.3d 225].) Here, because appellants raised no objections to the City's proposed statement of decision, in conducting our review we will presume the trial court made all necessary findings to support its order. (*Id.* at p. 60.)

---

[5] In its response to the opening brief, the City maintains that each and every one of appellants' contentions lacks merit. However, it first addresses the propriety of the preliminary injunction, concluding that its issuance was correctly based upon the evidence that appellants had violated several provisions of the City's municipal code, thereby creating a nuisance per se.

[6] The City served its proposed statement of decision on February 2, 2007. The court signed the document on February 7 and filed it on February 20. Appellants were afforded an opportunity to voice objections, but apparently failed to do so.

### A. *Standard of review.*

"We review an order granting a preliminary injunction, under an abuse of discretion standard, to determine whether the trial court abused its discretion in evaluating the two interrelated factors pertinent to issuance of a preliminary injunction—(1) the likelihood that the plaintiffs will prevail on the merits at trial, and (2) the interim harm that the plaintiffs are likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued. [Citation.] Abuse of discretion as to either factor warrants reversal. [Citation.]" (*Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1299 [72 Cal.Rptr.3d 259] (*Alliant*).)

" 'In determining the validity of the injunction, we look at the evidence presented to the trial court to determine if there was substantial support for the trial court's determination that the plaintiff was entitled to the relief granted.' [Citation.] 'Where the evidence before the trial court was in conflict, we do not reweigh it or determine the credibility of witnesses on appeal. "[T]he trial court is the judge of the credibility of the affidavits filed in support of the application for preliminary injunction and it is that court's province to resolve conflicts." [Citation.] Our task is to ensure that the trial court's factual determinations, whether express or implied, are supported by substantial evidence. [Citation.] Thus, we interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order. [Citations.]' [Citation.]" (*Alliant, supra*, 159 Cal.App.4th at p. 1300.)

### B. *Substantial evidence supports the trial court's findings.*

The evidence showed that Naulls, in applying for a business license, failed to indicate that he intended to operate a medical marijuana dispensary, instead describing the business as "miscellaneous retail." Had Naulls provided the correct information, his application would not have been granted. Based on that application, the City issued a business license; however, the issuance of a license and payment of a business tax do not authorize the applicant to do business within the City. As expressly stated on the business license application, "All Businesses must comply with all city codes and must have the Department of Planning approval prior to opening." Naulls did not comply with the City's requirements, failing to take any steps to obtain approval before opening his doors for business. As a consequence, operation of HNC violated the City's municipal code and, as such, constituted a nuisance per se.

But for the fact that appellants filed a *reply* brief asserting a position unlike the one taken in their opening brief, this opinion would likely have ended after the preceding paragraph. Indeed, substantial evidence supports the trial court's conclusion. In any event, we turn now to appellants' various claims.

■ First, appellants challenge the court's statement of decision insofar as they assert "Naulls applied for a business license from the city and 'did not indicate' that it was for a medical marijuana collective; instead he described it as 'miscellaneous retail.' " Appellants concede the accuracy of that statement, but argue the statement of decision contains no factual finding that Naulls *falsified* the business license application or that the business licensing sections of the City's municipal code had been violated. Appellants are correct that the statement of decision makes no reference to falsification of the application. However, they overlook the fact that our function is to review the record for substantial evidence to support the court's findings, whether express or implied. Thus, it matters not whether the statement of decision contains an express finding to support the court's decision; it is enough that the record reflects substantial evidence to support an implied finding. Furthermore, we reject appellants' position that the court's so-called "musings" throughout the hearing, upon which the City relies in its respondent's brief, do not constitute findings and, in any event, are not supported by substantial evidence. For example, they point to the court's statement that Naulls "was not particularly forthcoming on the application," contending, "A finding that one is less than forthcoming does not amount to a finding of falsification." Assuming that a finding of falsification requires intent, it matters not whether Naulls intentionally lied on his application. What does matter is that he was required, under section 5.02.040, subdivision (A), of the City's municipal code, to specify "[t]he exact nature or kind of business for which a license is requested," which he failed to do. He therefore provided incomplete information, in violation of the code, and as a result the City issued a business license which it would not otherwise have done.

Next, appellants challenge the reference in the statement of decision to the language appearing on the preprinted license application stating, "All Businesses must comply with all city codes and must have the Department of Planning approval prior to opening." Appellants concede that the form contains this language, but maintain there is no authority for the proposition that a business owner must obtain approval before opening his or her business. Appellants overlook section 5.02.370, subdivision (B), which states: "The issuance of a license under the provisions of this chapter to a particular licensee does not constitute a consent, direct or indirect, by the city that the licensee may operate such business in violation of any of the provisions of this code, ordinances or resolutions or any law of the state or federal

government. Any business to whom a license has been issued under this chapter *will continue to be required, after the issuance thereof, to comply with all the laws of the city*, including, but not limited to its zoning regulations, building regulations, fire regulations, plumbing regulations, electrical regulations, mechanical code and subdivision regulations." (Corona Mun. Code, § 5.02.370, subd. (B), italics added.)

Next, appellants contend the statement of decision contains a "serious misstatement of fact" insofar as it asserts, "Based on the application, the City 'classified' the business as 'commercial retail' for zoning purposes." They insist there is no evidence to support the notion that the business was "classified" as such for zoning purposes. Referring to Temple's declaration, appellants concede that the *location* of the business *is* in a commercial retail zone, but contend that this is unrelated to the use of the business for zoning purposes based on Naulls's application. They argue the City took no action for purposes of zoning because, relying upon declarations from Naulls and his attorney, "unlike other cities, [it] has no mandatory zoning procedure for new businesses." In short, appellants contend the City merely issued a business license for revenue purposes; it did not "classify" HNC as commercial retail or anything else for zoning purposes. However, as discussed below, regardless of whether HNC was erroneously classified as commercial retail for purposes of zoning, appellants opened for business without the City's approval, in violation of various sections of the City's municipal code.

Next, contending that the statement of decision reaches an erroneous legal conclusion, appellants point to the following statement: " 'Uses not categorized under the Specific Plan or the Municipal Code must be presented to the City's Planning Commission, which holds a hearing, makes findings and, where appropriate, assigns a zoning designation based on the proposed "similar use." ' " Challenging the word "must," appellants insists that this is an incorrect assertion of law based solely on the "say-so" of Temple as alleged in her declaration, as no such requirement appears in the City's municipal code. Although appellants are correct, we fail to see their point. A business operator who wishes to operate a business which does not qualify as a conforming or permitted use has several options, none of which were followed in this case. Whether or not Naulls was *required* to initiate "similar use" proceedings has no bearing on the reality that he failed to take appropriate steps to obtain the City's approval for opening his business.

Next, appellants challenge as speculative Temple's assertion that, had Naulls been up-front on his application, the City would have required him to submit to the procedure for obtaining a variance. Again, they argue there is

nothing in the municipal code to support this so-called "requirement." However, even if the procedure is optional rather than mandatory, the fact remains that Naulls would not have been given a license and would not have been able to open his business had he presented accurate information on his application as to the nature of his business.

Finally, we have saved for last what appellants describe as the "ultimate erroneous legal conclusion that leads directly to the unsupported preliminary injunction." That is, they contend there is no legal basis for the court's finding, as set forth in its statement of decision, that "[a]ny use not enumerated [in the City's municipal code] is presumptively prohibited." They argue: "Based on this faulty legal premise, the Statement of Decision proceeds on a short logical chain to the erroneous conclusion that Mr. Naulls has violated this unwritten rule, is therefore in violation of the Municipal Code (the precise section unstated), and is thus to be deemed a nuisance subject to abatement. This is the reasoning that underlies the trial court's finding that the City is likely to prevail on the merits which in turn supports the preliminary injunction. [¶] But the Planning Director's pronouncement that any use not expressly permitted is therefore prohibited is not law and cannot form the basis of a finding that the City is likely to prevail on the merits."

In challenging the court's conclusion, appellants assert, "the sleight of hand underlying the City's argument and the Court's ruling is unveiled: it depends not on the Municipal Code (for which no specific cite is provided) or any other written law, but rather on the unvarnished opinion of the Planning Director that anything not explicitly permitted by the City is therefore prohibited. Thus, centuries of legal principle [sic] establishing the right to use private property freely is swept away in the vaguest of terms and without any written authority, based only on the pronouncement of a government functionary. [¶] The City cannot impose so overarching a prohibition in this casual and uncertain fashion, based only on the Director's opinion of the meaning of the ordinance without any ascertainable written basis therein. Without consulting the Director's oracle, how is one possibly to know from reading the ordinance that this is its meaning?"

They continue: "It is fundamentally unfair to allow this extreme deprivation of the right to use private property based only on the pronouncements of the Planning Director. Such an exercise of the police power, like all zoning ordinances, can only be achieved through the legislative process, in writing, with notice and opportunity to be heard, and other required elements of due

process. [Citations.] Without such due process, a zoning ordinance is void. [Citation.] Unlike other cities' municipal codes which do contain such language explicitly,[7] Corona's does not. [Citations.] If Corona wants to add such language legislatively, it should do so with all required due process. But it should not be allowed to shortcut the required process by Directorial pronouncement." Appellants' position is unsound.

As previously indicated, the trial court found, based upon its reading of both the City's municipal code and Temple's declaration, that the City's municipal code "is drafted in a permissive fashion," and that "[a]ny use not enumerated therein is presumptively prohibited."[8] During the hearing, the court acknowledged that, in the absence of authority for the proposition that if a use is not expressly permitted, then it is nonpermitted, its ruling would be that the use is nonpermitted.[9] The court thereafter concluded that, because medical marijuana dispensaries are not enumerated in the municipal code as a permissive use, HNC was operating within the City as a nonpermitted, nonconforming use, thereby constituting a nuisance per se. As we shall explain, the record supports the trial court's conclusion.

HNC is located within the City's Specific Plan. The Specific Plan lists all of the uses within each zoning district, including permitted and nonpermitted uses. The City is responsible for selecting the appropriate zoning category. Neither selling nor distributing medical marijuana is among the classified uses. An additional category entitled "Miscellaneous" provides for "[s]imilar uses permitted by Planning Commission determination." In that regard, the Specific Plan refers property users to the procedures set forth in chapter 17.88 of the City's municipal code, which describes planning commission proceedings for determining appropriate zoning uses either not categorized under the Specific Plan or not applicable under title 17.

---

[7] In opposing the City's motion, appellants' counsel submitted a declaration wherein he set forth a provision of Kern County's zoning ordinance, as follows: " 'Any use not specifically permitted by the provisions of this title is prohibited. All prohibited uses specified at any place within this title are examples only and are not to be construed as a complete listing of all prohibited uses.' Kern County Code 19.02.060(C)." Counsel then alleged that a diligent search of the City's municipal code revealed no comparable language.

[8] Of course, effective as of 2007, sections 17.33.030 (commercial and office zones) and 17.44.030 (industrial zones) of the City's municipal code now provide that a medical marijuana dispensary is not a permitted land use. (Corona Ord. No. 2885, § 2.)

[9] Earlier, the court indicated it was unaware "if there's any language anywhere within Corona's Specific Plan, or Municipal Code, or any other type of statute or ordinance that says that. But it would seem the logical thing that . . . if it's not allowed and if it's not disallowed, that it would probably be . . . disallowed, unless they go through and obtain the correct zoning, which they never did."

■ Furthermore, chapters 17.33 (commercial and office zones) and 17.44 (industrial zones) of the City's municipal code contain language evidencing an intent by the City to prohibit uses not expressly identified. Pursuant to section 17.33.030 (permitted and conditionally permitted uses), the uses set forth in table 1-17.33 (permitted land uses) are either permitted, conditionally permitted, or not permitted. "Other similar permissible uses not identified in Table 1-17.33 may be permitted by Planning Commission determination pursuant to Chapter 17.88 of the Corona Municipal Code (Similar Uses)." (Corona Mun. Code, § 17.33.030.) Similarly, pursuant to section 17.44.030 (permitted uses; conditional uses; prohibited uses), the uses set forth in table 1 "shall be permitted, may be permitted with a conditional use permit . . . or shall not be permitted . . . . Other similar permissible uses not identified in Table 1 may be permitted by Planning Commission determination pursuant to Chapter 17.88." (Corona Mun. Code, § 17.44.030.)

As the municipal code presently reads, medical marijuana dispensaries are expressly prohibited in commercial and office zones, and in industrial zones. Of course, when the circumstances in this case occurred, there was no reference in the municipal code to medical marijuana dispensaries, thus, a business owner looking to open such a business would be obliged to look to the language set forth in section 17.33.030. This would mean that the property owner would be required to comply with the provisions of chapter 17.88 of the City's municipal code, which in turn sets forth the procedure for obtaining planning commission approval for proposed similar uses.

In essence, appellants take the position that the City's action precluding Naulls from operating HNC is based solely on Temple's declaration. Appellants are mistaken. Because Naulls gave incorrect information on his business license application, the City issued a business license in error and assigned a "commercial retail" designation for purposes of zoning. Had Naulls complied with the requirements set forth by the City with regard to business license applications, he would not have been issued a business license and instead would have been placed in a position whereby he would have had no alternative but to request either an amendment to the Specific Plan or a "similar uses" determination. He did neither. Thus, by evading the procedures which applied to his situation, and with knowledge—as provided to him by a City representative both verbally and in writing—that a medical marijuana dispensary was not a permitted use, he began operating HNC in violation of various sections of the City's municipal code, i.e., section 5.02.030 (requiring a valid business license be obtained through compliance with all applicable rules); section 5.02.040, subdivision (A) (requiring applicant to describe "[t]he exact nature or kind of business for which a license is requested");

section 5.02.040, subdivision (F) (requiring applicant to provide "[a]ny further information" necessary to issue the type of license sought); section 5.02.370 (requiring compliance with all city laws, including zoning regulations, after issuance of a business license); section 17.88.010 (recognizing that ambiguity may arise concerning appropriate classification of or permission of particular unlisted use); section 17.088.020 (allowing the planning commission to initiate proceedings to ascertain all relevant facts concerning proposed use, to hold public hearings, make findings and state reasons for approving or denying classification and permitting of the proposed unlisted use as "similar" to those permitted in a particular zone); and section 17.88.030 (providing that the planning department shall study the proposed similar use and provide all information necessary to assure action consistent with the City's municipal code and general plan), Naulls and HNC created a nuisance per se pursuant to section 1.08.020, subdivision (B).[10]

■ We therefore conclude that, notwithstanding the City's police power to impose zoning ordinances as a means of promoting the public welfare (see, e.g., *Hernandez v. City of Hanford* (2007) 41 Cal.4th 279 [59 Cal.Rptr.3d 442, 159 P.3d 33]), the trial court had ample evidence upon which to conclude that any use not expressly designated by the City was prohibited in the absence of appropriate action to secure a variance. Our conclusion finds further support by analogy to the rule of statutory construction known as *expressio unius est exclusio alterius*, which means " 'the expression of certain things in a statute necessarily involves exclusion of other things not expressed. . . .' [Citation.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13 [241 Cal.Rptr. 67, 743 P.2d 1323].) Applying the same rationale, where a particular use of land is not expressly enumerated in a city's municipal code as constituting a *permissible* use, it follows that such use is *impermissible*. We find unpersuasive the argument that the municipal codes of other cities *do* include a provision to the effect that any use not specifically permitted is prohibited.

■ In sum, the court was presented with substantial evidence that Naulls, by failing to comply with the City's various procedural requirements, created a nuisance per se, subject to abatement in accordance with the City's municipal code. Issuance of a preliminary injunction was therefore a proper exercise of the court's discretion.

---

[10] Section 1.08.020, subdivision (A), of the City's municipal code provides that, unless a different penalty is prescribed, the violation of any provision of or failure to comply with any of the requirements of the code is punishable as a misdemeanor. Additionally, pursuant to section 1.08.020, subdivision (B), "any condition caused or permitted to exist in violation of any of the provisions of this code is a public nuisance and may be, by this city, abated as such."

## DISPOSITION

The order is affirmed. Respondent is awarded its costs on appeal.

McKinster, Acting P. J., and Gaut, J., concurred.