Filed 1/7/22

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PROTECT OUR NEIGHBORHOODS, Plaintiff and Appellant, v. CITY OF PALM SPRINGS et al., Defendants and Respondents. | E074233 (Super.Ct.No. RIC1704320) |
| PROTECT OUR NEIGHBORHOODS, Plaintiff and Appellant, v. CITY OF PALM SPRINGS et al., Defendants and Respondents; SCOTT GAITAN et al., Real Parties in Interest and Respondents. | (Super.Ct.No. RIC1724363) OPINION |

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part VII.

1

APPEAL from the Superior Court of Riverside County. Chad W. Firetag, Judge. Affirmed.

Law Offices of Babak Naficy and Babak Naficy for Plaintiff and Appellant.

Woodruff, Spradlin & Smart, James H. Eggart, Ricia R. Hager and Thomas P. Kinzinger for Defendants and Respondents.

No appearance for Real Parties in Interest and Respondents.

Because the City of Palm Springs (City) is a vacation destination, there has long been a market for short-term home rentals there. Since 2008, City ordinances have expressly allowed the short-term rental of a single-family dwelling, subject to various conditions designed to protect the interests of neighboring residents (as well as the City's own interest in collecting transient occupancy taxes, a/k/a hotel taxes).

In 2017, the City reenacted the previous ordinance, with amendments. Among other things, it made a new finding that the ordinance was consistent with the City's Zoning Code.

Meanwhile, Protect Our Neighborhoods (Protect), a membership organization opposed to short-term rentals, filed this action. Protect claimed, among other things, that the 2017 version of the short-term rental ordinance (Ordinance) violated the City's Zoning Code. The trial court disagreed and upheld the Ordinance.

Protect appeals, contending:

2

(1)  Short-term rentals violate the Zoning Code because they are commercial, not residential.

(2)  Short-term rentals violate the Zoning Code because they change the character of, and adversely affect the uses permitted in, a single-family residential zone.

(3)  The Ordinance is inconsistent, contradictory, and based on erroneous findings.

(4)  If the Zoning Code permits short-term rentals at all, it does so only on condition that the owner obtain a land use permit or a conditional use permit.

(5)  If the Zoning Code permits short-term rentals at all, it does not allow owners to rent out properties that they do not live in.

We will hold that the trial court correctly ruled in favor of the City and against Protect.  Hence, we will affirm.

I

STATEMENT OF FACTS

A.      *The "Zoning Code" Chapter of the Municipal Code.*

Chapters 91 through 94 of the Municipal Code[1] are entitled "Zoning Code."

Under the Zoning Code, the uses allowed without a permit in a single-family residential (R-1) zone include (1) use as a "[p]ermanent single-family dwelling[]" and (2) "uses customarily incident to the permitted uses when located on the same lot therewith." (Mun. Code, § 92.01.01.A.)

---

[1]      All citations to the "Municipal Code" or "Mun. Code" are to the Palm Springs Municipal Code.

"Dwelling" is defined as "a building or portion thereof designed exclusively for residential occupancy . . . , but not including hotels, boarding or lodging houses, or mobilehomes or trailers, except when installed on a permanent foundation, or motorized homes." (Mun. Code, § 91.00.10.B.)

All uses not expressly permitted are prohibited. (Mun. Code, § 92.01.02.) In addition, in an R-1 zone, "[c]ommercial uses" "shall not be permitted . . . by commission determination . . . ." (Mun. Code, § 92.01.02.A.) "'Commission' means the planning commission of the city of Palm Springs." (Mun. Code, § 91.00.10.B.)

B.  *The "Vacation Rentals" Chapter of the Municipal Code.*

1.  *The 2008 ordinance.*

Title 5 of the Municipal Code is entitled "Business Regulations." Chapter 5.25 is entitled "Vacation Rentals."

This chapter was first enacted in 2008, by Ordinance No. 1748 ("Original Ordinance"). It included the following provisions, which are still in the Ordinance.

It applied to rentals for 28 days or less. (Mun. Code, former § 5.25.040; see now Mun. Code, §§ 5.25.030, 5.25.040(d), (e).)[2]

It required an owner of a vacation rental property to register the property with the City annually and to obtain a vacation rental registration certificate. (Mun. Code,

---

[2]  As far as we can tell, there is no difference between a "short-term rental" and a "vacation rental." For purposes of this case, they are both defined as rentals of 28 days or less. We use both terms interchangeably.

§§ 5.25.040(a), 5.25.060(a).) To do so, the owner had to have liability insurance. (Mun. Code, former § 5.25.060(c); see now Mun. Code, § 5.25.060(a)(10), 5.25.070(u).)

It limited occupancy based on the number of bedrooms. (Mun. Code, former § 5.25.070(b); see now Mun. Code, § 5.25.070(c), (d).) It required an owner to use "reasonably prudent business practices" to ensure that renters and their guests did not create unreasonable noise, disturbances, engage in disorderly conduct, or violate the law. (Mun. Code, former § 5.25.070(d); see now Mun. Code, § 5.25.070(f).) The owner, the owner's agent, or the owner's designated "local contact person" had to be available at all times to respond to complaints. (Mun. Code, §§ 5.25.060(a)(3), 5.25.070(e).)

Finally, it required the owner to pay transient occupancy taxes. (Mun. Code, § 5.25.060(a)(7), former Mun. Code, § 5.25.070(*l*); see now Mun. Code, § 5.25.070(q).)

2.     *The April 2016 amendments*.

In April 2016, the City enacted Ordinance No. 1891, which amended the Original Ordinance by prohibiting short-term rentals of apartments. Short-term rentals are now allowed of single-family residences and duplexes only. (Mun. Code, §§ 5.25.030, 5.25.075(a).) Although it was a temporary urgency measure, in July 2016, Ordinance No. 1897 extended it, and in October 2016, Ordinance No. 1902 (October 2016 Ordinance) made it permanent.

3.     *The December 2016 amendments*.

In December 2016, the City enacted Ordinance No. 1907 (December 2016 Ordinance), which would have amended Chapter 5.25 in respects not particularly relevant

5

here. The December 2016 Ordinance, by law (Elec. Code, § 9235; Mun. Code, § 803) and by its terms, did not go into effect for 30 days. During this 30-day period, a valid referendum petition was filed, which prevented the December 2016 Ordinance from going into effect at the end of the 30 days. (Elec. Code, § 9237.) In February 2017, rather than schedule a referendum election, the City rescinded the December 2016 Ordinance. Thus, the December 2016 Ordinance never took effect.[3]

4. *The current ordinance.*

In March 2017, the City adopted Ordinance No. 1918 – the Ordinance at issue – which restated and amended Chapter 5.25.

Among other changes, it barred the ownership of more than one vacation rental (Mun. Code, § 5.25.040(b)), it limited vacation rentals to 36 per year (Mun. Code, § 5.25.070(b)), it revised the enforcement provisions (Mun. Code, § 5.25.090), and it added new provisions for "Estate Homes" with five or more bedrooms (Mun. Code, §§ 5.25.030, 5.25.070(d)) and for "Homesharing" (Mun. Code, §§ 5.25.030, 5.25.078).

It also made a couple of findings that mentioned zoning.

First, it added a finding that one of the purposes of the Vacation Rentals chapter is to "ensure that vacation rentals . . . are ancillary and secondary uses of residential property consistent with the provisions of the City's Zoning Ordinance . . . ." (Mun. Code, § 5.25.020(b).)

---

[3] Protect seems to think that, as a result, there was no short-term rental ordinance at all. We disagree. The October 2016 Ordinance remained in effect. Ultimately, however, this point is not material to our resolution of the issues.

Second, it added a finding that: "The primary use of single-family and multi-family dwelling units in the City of Palm Springs is the provision of permanent housing for full time and part time residents of the City who live and/or work in the City. Vacation Rentals . . . are not [a] use[] specifically recognized in the City's Zoning Ordinance, nor are these uses expressly identified as uses permitted in single-family or multi-family zones. Vacation Rentals . . . are similar in character and use as hotels and other commercial short term uses and can only be permitted in single-family or multi-family zones if such uses are ancillary and secondary to the residential use of property. This Ordinance confirms Vacation Rentals . . . as [an] ancillary and secondary use[] of residential property in the City." (Mun. Code, § 5.25.020(a).)

During a City Council meeting, the city attorney explained: "[O]ne of the important features of this revised ordinance that you have in front of you is . . . that this ordinance . . . recognizes that vacation rentals are an ancillary and secondary use of residential property within the city. This is important because this resolves any kind of ambiguity that may exist on that particular issue."

The City's director of planning has determined that, under the Zoning Code, the short-term rental of residential property is a permitted use in a residential zone.

II

STATEMENT OF THE CASE

Protect, as the trial court found, "is comprised of individual homeowners from various Palm Springs neighborhoods who find the short-term vacation rentals of single family homes to be disruptive and inconvenient."

Protect filed this action against the City in March 2017. In December 2017, it filed a second action, naming as real parties in interest a number of individual owners who had allegedly been issued vacation rental registration certificates.[4]

The two cases were consolidated. Protect's pleading in each case was styled as a complaint combined with a mandate petition. Protect asserted causes of action for violation of the City's municipal code, violation of the California Environmental Quality Act (CEQA), injunctive relief, and declaratory relief.[5]

The matter was presented to the trial court on declarations, documentary evidence, the administrative record, and matters subject to judicial notice, without any oral testimony. In August 2019, the trial court heard argument. In October 2019, it issued its final statement of decision.

---

[4]    These individuals are Scott and Beverly Gaitan, Jeffery Schneider, Nancy Klemperer, Michael Enenbach, Thomas Coggia, Dennis Potvin, Cheney and William Shapiro, and Joseph Ambrosavage.

[5]    Protect is not raising any CEQA issue in this appeal. It also is no longer raising the argument it raised below that the Ordinance conflicts with the City's general plan.

It found in favor of the City and against Protect on all issues.  As relevant here, it found that:

(1)  "[T]he City's adoption of the . . . Ordinance[] reflect[s] its long-standing and consistent interpretation of its Zoning Code that [short-term rentals] are not a prohibited 'commercial' use of residential property.  That interpretation is entitled to deference, and [Protect] has failed to establish that it is clearly erroneous [citation]."

(2)  "[The] Ordinance . . . does not require [short-term rentals] to be 'ancillary and secondary' to the residential use of a property; the Ordinance reaffirms the City's longstanding determination that [short-term rentals] *are* ancillary and secondary uses of the properties [citation]."

It entered judgment accordingly.

## III

## STANDARD OF REVIEW

To the extent that this is a traditional mandate proceeding (Code Civ. Proc., § 1085), "our review is limited to a determination of whether the agency's decision was arbitrary, capricious, entirely lacking in evidentiary support, unlawful, or procedurally unfair.  [Citation.]  Independent review is required, however, where the issue involves statutory or regulatory construction, such as whether the agency's action was consistent with applicable law.  [Citation.]" (*California School Bds. Assn. v. State Bd. of Education* (2010) 186 Cal.App.4th 1298, 1313-1314, fn. omitted.)

9

To the extent that this is a declaratory relief action (Code Civ. Proc., § 1060), we review the judgment as we would any judgment after a bench trial, with one exception. "In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) The exception is that the trial court can deny declaratory relief for discretionary reasons (Code Civ. Proc., § 1061); if it does so, we review that decision for abuse of discretion. (*D. Cummins Corp. v. United States Fidelity & Guaranty Co.* (2016) 246 Cal.App.4th 1484, 1490.) However, that is not what the trial court did here.

In this case, Protect's contentions overwhelmingly raise issues of law. Accordingly, our review is largely independent.

IV

CONFLICT WITH THE ZONING CODE

Protect contends that the Ordinance conflicts with the Zoning Code.

A.     *Effect of a Conflict*.

Even assuming there is a conflict, Protect never explains why that would invalidate the Ordinance.

Throughout its brief, Protect refers to the Zoning Code as if it were some kind of higher law, akin to a state constitution or a city charter, that invalidates any ordinary law that is in conflict with it. Actually, both the Zoning Code and the Ordinance are coequal parts of the Municipal Code.

10

The applicable rule is that "[w]hen two or more statutes concern the same subject matter and are in irreconcilable conflict the doctrine of implied repeal provides that the most recently enacted statute expresses the will of the Legislature, and thus to the extent of the conflict impliedly repeals the earlier enactment." (*In re Thierry S.* (1977) 19 Cal.3d 727, 744.) To put it simply, a past City Council cannot tie the hands of a future City Council.

We recognize that "[r]epeals by implication are disfavored." (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 637.) "'Thus, ""'we will find an implied repeal 'only when there is no rational basis for harmonizing . . . two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation."'"'" [Citation.]" (*Ibid.*) Here, however, it is Protect's position that the two statutes are, in fact, irreconcilable. If they can be reconciled, then the Ordinance is valid. If, however, they cannot be reconciled, then the Ordinance is still valid.

Protect's only counter-argument[6] is that "the City Council's findings in support of the Ordinance do not evidence any intent to supersede . . . the Zoning Code. To the

---

[6] Purportedly as a counter-argument, Protect argues that the Zoning Code required the City to make certain findings before it could make short-term rentals a permitted use in an R-1 zone by enacting the Ordinance. But this is not a true counter-argument at all; it is just another argument that the Ordinance violates the Zoning Code. And it fails for the same reason — if the Ordinance conflicts with the Zoning Code, the Ordinance prevails.

We will discuss whether this asserted conflict actually exists in part IV.B, *post*.

11

contrary, the City Council's findings show the Council intended to adopt Vacation Rental regulations in a manner that was consistent with the Zoning Code." However, if the two statutes are, in fact, irreconcilable, that would be a sufficient demonstration of the intent to repeal the inconsistent portions of the Zoning Code. It does appear that the City Council was aware of a potential conflict with the Zoning Code and tried to head it off. Assuming that attempt failed, however, surely it did not intend the Ordinance to be void. To the contrary, that very attempt shows that it intended the Ordinance to be valid, in spite of any potential conflict.

B.     *Existence of a Conflict.*

Separately and alternatively, the Ordinance does not actually conflict with the Zoning Code.

To recap slightly, in an R-1 zone, the Zoning Code permits any use "customarily incident to" use as a "[p]ermanent single-family dwelling[]." (Mun. Code, § 92.01.01.A.) "Dwelling" is defined as "a building or portion thereof designed exclusively for residential occupancy . . . ." (Mun. Code, § 91.00.10.B.)

The Ordinance states: "This Ordinance confirms Vacation Rentals . . . as [an] ancillary and secondary use[] of residential property in the City." (Mun. Code, § 5.25.020(a).)[7]

_____

[7]     A use that is "ancillary and secondary" to another use, within the meaning of the Ordinance, appears to be the same thing as a use that is "customarily incident to" another use, within the meaning of the Zoning Code. We treat these terms as interchangeable.

12

"In interpreting municipal ordinances, we exercise our independent judgment as we would when construing a statute. [Citation.] Nonetheless, a city's interpretation of its own ordinance "'is entitled to great weight unless it is clearly erroneous or unauthorized.'" [Citation.]" (*Berkeley Hills Watershed Coalition v. City of Berkeley* (2019) 31 Cal.App.5th 880, 896.)[8]

### 1. *Commercial use in a residential zone.*

Protect's core argument is that only residential uses are permitted in an R-1 zone, and short-term rentals are commercial. The Zoning Code, however, permits not only use as a "dwelling" (which is defined in terms of residential occupancy), but also uses "customarily incident to" use as a "dwelling." It does not prohibit any customarily incident use merely because it is "commercial." In other words, Protect is drawing a false dichotomy between "residential" and "commercial."

Protect asserts that "[c]ommercial activities are strictly prohibited in single-family (R-1) zones . . . unless they are specifically enumerated in the [Zoning] Code," citing Municipal Code section 92.01.02.A. That is incorrect. That section merely provides that, in an R-1 zone, "[c]ommercial uses" "shall not be permitted . . . *by commission*

---

[8] The Zoning Code provides, "In any case where there may be conflicting or ambiguous provisions within this Zoning Code, the director of planning and building . . . shall determine the applicability of such provisions." (Mun. Code, § 91.00.08.B.) As the City notes, its director of planning has determined that the short-term rental of residential property is a permitted use in a residential zone. However, we do not believe this provision applies here, because the asserted conflict is not between two provisions "within" the Zoning Code; rather, it is between the Vacation Rentals provisions (Chapter 5.25) and the Zoning Code (Chapters 91-94).

*determination . . . .*"  (Mun. Code, § 92.01.02.A, italics added.)  In other words, while the planning commission has discretion to authorize some uses not otherwise permitted (Mun. Code, § 92.01.01.B, 92.01.01.C, 92.01.01.D), it cannot exercise that discretion to permit a commercial use.  The cited section does not otherwise prohibit commercial uses.

Similarly, Protect cites our opinion in *City of Corona v. Naulls* (2008) 166 Cal.App.4th 418 for the proposition that a "commercial use not specifically enumerated in the zoning code is not allowed unless the zoning code is amended to specifically permit the use."  We find no statement to this effect in *Naulls*.  *Naulls* did observe that the zoning code there "contain[ed] language evidencing an intent by the City to prohibit uses not expressly identified."  (*Id*. at p. 432.)  The Zoning Code here similarly provides that all uses that are not permitted are prohibited.  However, *Naulls* did not say anything about commercial uses in particular.

In the Ordinance itself, the City "confirm[ed]" that vacation rentals are an "ancillary and secondary use[] of residential property . . . ."  (Mun. Code, § 5.25.020(a).)  This interpretation was not clearly erroneous or unauthorized.  In fact, even if we reviewed it independently, we would agree.

Customarily, the owner of a single-family dwelling may live there; alternatively, however, the owner may rent it out.  Apparently, Protect would view this as "commercial," but the property is still being used as a single-family dwelling.  The Zoning Code does not appear to prohibit the long-term rental of a house in an R-1 zone, whether annually or month-to-month.  The City's director of planning testified that it has

14

been the City's practice to treat the occupancy of residential property by renters as a permitted use. It follows that the short-term rental of a house also is not unduly "commercial."

Admittedly, a short-term rental is not use as a "single-family dwelling"; neither the owner nor the renter is living there. (See Merriam-Webster Online Dict. <https://www.merriam-webster.com/dictionary/dwelling> ["a shelter (such as a house) in which people live"] [as of Jan 4, 2022].) Nevertheless, it is a use *customarily incident to* use as a single-family dwelling. An owner customarily can rent out a house short-term as well as long-term. Airbnb did not invent this practice; it just made it easier and more common. As early as 1991, the City was already collecting transient occupancy taxes on short-term rentals. And presumably, short-term rentals were going on even before they were taxed.

Protect argues that there is no meaningful distinction between a short-term rental and a short-term motel stay. But there is: A vacation rental, by the City's definition, is a rental of a single-family dwelling. The City could reasonably conclude that the short-term rental of a single-family dwelling (particularly when it is subject to the restrictions in the Ordinance) has different impacts than the short-term rental of 20 or 50 or 100 rooms in a motel.

Protect also cites the finding in the Ordinance itself that "Vacation Rentals . . . *are similar in character and use as hotels and other commercial short term uses* and can only be permitted in single-family or multi-family zones if such uses are ancillary and

secondary to the residential use of property." (Mun. Code, § 5.25.020(a), italics added.) It claims this is a concession that vacation rentals are commercial. As already discussed, however, the finding was perfectly accurate and consistent with the Zoning Code: Commercial uses are permitted in an R-1 zone, provided they are customarily incident to use as a single-family dwelling.

The case law and other authority that Protect cites does not call for a different conclusion.

Protect cites *Ewing v. City of Carmel by the Sea* (1991) 234 Cal.App.3d 1579. There, Carmel prohibited all short-term rentals, finding them to be a commercial use inconsistent with its R-1 zone. (*Id*. at pp. 1584, 1589.) The appellate court relied on the fact that Carmel had designated short-term rentals as "commercial" in holding that the ordinance would not apply to house-sitting or house-swapping. (*Id*. at p. 1595.) We cannot tell from *Ewing*, however, how similar Carmel's zoning laws were to the City's. Did they permit uses "customarily incident" to use as a dwelling in an R-1 zone? Did they define "commercial"?

Even more important, the rule of deference to a city's interpretation of its own ordinance means that two cities could interpret identical language in two different ways, and we would have to accept both interpretations, if they were reasonable. Apparently in Protect's view, the fact that Carmel prohibited short-term rentals in 1989 means that now all California cities must prohibit short-term rentals, as "commercial." Not so.

Protect also cites Harrington, *Vacation Rentals: Commercial Activity Butting Heads with CC&Rs* (2015) 51 Cal. Western Law Rev. 187 for the proposition that vacation rentals are a "business activity." (*Id*. at p. 201.)  The thrust of that article, however, is that conditions, covenants, and restrictions (CC&Rs) that prohibit the operation of a "business" should be interpreted as prohibiting short-term rentals.  It conceded that the case law on the subject was generally either undeveloped or contrary to its thesis.  (*Id*. at pp. 208-215.)  Moreover, it recognized that "CC&R provisions that prohibit commercial use and or business activity . . . are distinct from zoning ordinances regulating single-family use." (*Id*. at p. 216.)  Finally, it acknowledged that in zoning cases, unlike CC&R cases, "results are highly localized and specific to the local and jurisdictional parameters of single-family use." (*Id*. at p. 219.)  In any event, as we have already observed, the residential-commercial distinction is a false dichotomy here.

Finally, Protect cites *Biagini v. Hyde* (1970) 3 Cal.App.3d 877.  *Biagini* involved a restrictive covenant that lots could be used only "for residential purposes." (*Id*. at p. 879.)  It stated:  "'[A]lthough no California authority is found, courts of some other jurisdictions have held 'that an incidental use of a dwelling for business or professional purposes does not necessarily constitute a violation of a covenant restricting the use of the dwelling to residential purposes, but that the question of violation in such a case depends upon the extent or manner in which the incidental use in question is conducted.' [Citation.]  . . .  These foreign cases have developed no precise test of incidental use, but such factors have been considered as to whether the use is casual or infrequent, results in

17

no appreciable damage to other owners in the area, creates no inconvenience or annoyance to neighboring residents, and is in substantial harmony with the purposes of the parties in establishing the restriction. [Citations.] A review of these cases shows, however, no high degree of predictability of result; the concept of 'incidental use' . . . has not proved to be a reliable guide to the construction of recorded restrictions." (*Id*. at pp. 879-880.)

Protect quotes only the list of "factors [that] have been considered"; it then argues that under these factors, short-term rentals are not an incidental use: They are not infrequent, they do damage other owners in the area, and they do inconvenience neighbors. Protect omits to mention the *Biagini* court's conclusion that these factors do not produce predictable results and that there is no "reliable guide." More important, however, the City is not bound by *Biagini*. It is free to use "incident" (or "incidental") in its own ordinances in a way such that the factors listed in *Biagini* are not controlling.

2.     *Other asserted inconsistencies*.

Protect also argues that the Ordinance is inconsistent with the Zoning Code in two other respects.

First, it argues that, before the City could enact a new permitted use, the Zoning Code required it "to make a finding that short-term rental is 'similar to those listed above and not more obnoxious or detrimental to the public health, safety and welfare or to other uses permitted in the zone.'"

18

Not so.  The Zoning Code provides that "[*t*]*he commission* may . . . permit any other uses which it may determine to be similar to those listed above and not more obnoxious or detrimental to other uses permitted in the zone or to the public health, safety and welfare . . . ."  (Mun. Code, § 92.01.01(B), emphasis added.)  Thus, this provision applies only to the planning commission.  It places no similar restriction on the City Council's power to add a permitted use (and for the reasons discussed in part IV.A, *ante*, it could not).

Second, Protect argues that "[a]ccording to the City'[s] zoning code, the use of a dwelling 'may not change the character of nor adversely affect the uses permitted in that zone of which it is a part"; it cites Municipal Code section 5.22.010.  It goes on to argue that short-term rentals change the character of R-1 zones and adversely affect the uses permitted in R-1 zones.

The premise of this argument, however, is simply false.  Section 5.22.010 is not part of the Zoning Code.  It is in the title entitled "Business Regulations," in the chapter entitled, "Home Occupations."  It provides, "*This chapter* is intended to provide for those home occupation uses customarily conducted entirely within a residential dwelling and carried on by a maximum of two occupants.  The use must be clearly incidental to the residential use of the dwelling and may not change the character thereof nor adversely affect the uses permitted in that zone of which it is a part."  (Italics added.)  Home occupation uses, and any restrictions on them, are irrelevant here.  Even if short-term

19

rentals do adversely affect owners of nearby single-family residences and their use of their own property, allowing them was a legislative judgment that was up to the City.

V

THE FINDINGS IN THE ORDINANCE

Protect attacks two of the findings in the Ordinance, as "internally inconsistent and incoherent", and as "'arbitrary, capricious or [without] reasonable or rational basis.' [Citation.]"

The Ordinance found that:

(1)  One of the purposes of the Ordinance is to "ensure that vacation rentals . . . are ancillary and secondary uses of residential property . . . ."  (Mun. Code, § 5.25.020(b).)

(2)  "This Ordinance confirms Vacation Rentals . . . as [an] ancillary and secondary use[] of residential property in the City."  (Mun. Code, § 5.25.020(a).)

Protect claims these findings are inconsistent.  In Protect's view, the first finding means that vacation rentals are not an ancillary and secondary use *only because they are regulated by the Ordinance*; however, the second finding means that vacation rentals are *always* an ancillary and secondary use.

Its interpretation of the first finding is incorrect.  The Ordinance "ensure[s]" that short-term rentals are ancillary and secondary uses precisely by "confirm[ing]" that they are.  In other words, it clarifies the application of the Zoning Code by declaring that short-term rentals are a customarily incidental use.  It does then proceed to subject them to particularized regulations; however, these regulations do not affect the status of short-

20

term rentals as a customarily incidental use. What difference does it make to the use whether the owner has a registration certificate, has a local contact person, etc.?

Protect also argues that these findings are erroneous. It cites no authority for the proposition that this would invalidate a city's Ordinance (as opposed to an agency's action). "It is not the judiciary's function . . . to reweigh the 'legislative facts' underlying a legislative enactment. [Citation.]" (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 372.) "'[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.' [Citation.]" (*People v. Bloomfield* (2017) 13 Cal.App.5th 647, 658.)

First, Protect asserts that these findings have no "factual basis," because short-term rentals are not, in fact, ancillary and secondary uses of residential property. In part IV.B, *ante*, however, we held that they are — or, at a minimum, the City could reasonably find that they are.

Next, Protect asserts that the finding that the Ordinance will "ensure" that vacation rentals are ancillary and secondary uses of residential property is erroneous, because an owner can acquire a piece of property and use it exclusively as a short-term rental, without ever living there. However, a property can be residential even if it is vacant.[9] The Zoning Code defines "dwelling" in terms of whether the building is "designed exclusively for residential occupancy" (Mun. Code, § 91.00.10.B.), not whether anyone

---

[9] Under Protect's view, a vacant single-family residence would not be a residence at all and thus would be prohibited in an R-1 zone.

actually resides there.  It then limits the *uses* of such a property to *either* (1) use as a single-family residence, *or* (2) uses customarily incident thereto.  As we have held, short-term rental is such a use.

In a related argument, Protect contends that the real parties do not live in the properties that they rent out, and therefore they should not have been issued a vacation rental registration certificate.  However, as just discussed, the Ordinance does not require that an owner live in a short-term rental property, and it does not have to.

VI

NEED FOR A DISCRETIONARY PERMIT

As a fallback argument, Protect contends that under the Zoning Code, a short-term rental in a single-family residential zone requires a discretionary permit.

The Zoning Code lists three uses that can be permitted in an R-1 zone if and only if the planning commission issues a land use permit.  (Mun. Code, § 92.01.01.C; see also *id*., § 94.02.01.)  These are a large day care, a model home, and a "[t]emporary on-site sales trailer in conjunction with the sale of subdivision lots . . . ."  (Mun. Code, § 92.01.01.C.)

Similarly, the Zoning Code lists a number of uses that can be permitted in an R-1 zone if and only if the planning commission issues a conditional use permit.  (Mun. Code, § 92.01.01.D; see also *id*., § 94.02.00.)  These include accessory apartments, churches, schools, and golf courses.  (Mun. Code, § 92.01.01.D.)

22

Protect argues that "vacation rentals have greater impacts" than these uses. The Zoning Code, however, does not say that other uses that are *like* the listed uses require a permit, nor that other uses that have *similar impacts* require a permit. To the contrary, it specifically says that "uses customarily incident to" use as a single-family dwelling are allowed without a permit. (Mun. Code, § 92.01.01.A.)

Protect does *not* argue that there is no rational basis for distinguishing a short-term rental from a large day care or a school. And wisely so. Under the highly deferential test that would apply to such a distinction (*Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118, 1140; *Hernandez v. City of Hanford* (2007) 41 Cal.4th 279, 299), any such argument would be frivolous.

We must decline to rewrite the Zoning Code.

VII

THE TRIAL COURT'S EVIDENTIARY RULING

In a footnote, Protect contends that the trial court erroneously sustained real parties' objection to a declaration that Protect submitted.

"Footnotes are not the appropriate vehicle for stating contentions on appeal. [Citation.] . . . The rules require points on appeal to be stated under a separate heading summarizing the point. [Citation.]" (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947.) We therefore deem this contention forfeited. (See *Pasternack v. McCullough* (2021) 65 Cal.App.5th 1050, 1058, fn. 6.)

If only out of an excess of caution, we also note that the asserted error was harmless. The declaration asserted that real parties had failed to respond to discovery requests that were relevant to whether they used their properties primarily for residential or investment purposes. In light of our holding that real parties were not required to live at their properties (see part V, *ante*), any such failure to respond to discovery is irrelevant.

## VIII

## DISPOSITION

The judgment is affirmed. The City is awarded costs on appeal against Protect.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
P. J.

We concur:

MILLER
J.

SLOUGH
J.

24